IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.	CR 17-3237 JB

JESUS FRANCISCO FERNANDEZ,

        Defendant.

### MR. FERNANDEZ'S MOTION TO SUPPRESS AND REQUEST FOR EVIDENTIARY HEARING

COMES NOW Defendant Jesus Francisco Fernandez, by and through counsel John F. Robbenhaar, Assistant Federal Defender, pursuant to the Fourth and Fifth Amendments to the United States Constitution and Fed. R. Crim. P. 12(b), and moves this Court to suppress the following:

    A. All physical evidence DEA Agents seized from Mr. Fernandez on October 25, 2017 at the Greyhound bus station in Albuquerque, New Mexico, and

    B. All statements Mr. Fernandez made to DEA Agents (or DEA task force officers) on October 25, 2017.

The Assistant United States Attorney, Sammy Hurtado, opposes the relief requested herein. Mr. Fernandez requests that this Court conduct an evidentiary hearing so that he can demonstrate the facts of these constitutionally impermissible searches.

INTRODUCTION

The Court should suppress all of the fruits of the illegal search and seizure that occurred on October 25, 2017 at the Greyhound Bus Terminal in Albuquerque, New Mexico. Drug Enforcement Agency Special Agents Jarrell Perry and Kirk Lemmon seized Mr. Fernandez after an unconstitutional search of Mr. Fernandez's luggage, in the absence of voluntary consent. The evidence will show that SA Perry seized a piece of luggage from within the passenger compartment of the bus, and proceeded to walk up and down the aisle asking passengers "is this your bag?" Mr. Fernandez states that SA Perry's seizure of the bag and his exercise of control over that bag, effectively interfered with his possessory interest in the bag, which interference was meaningful for purposes of the Fourth Amendment. Further, because there was no attenuation between the illegal seizure of the bag, arrest of Mr. Fernandez and his post-arrest interrogation, suppression pursuant to the Fourth Amendment of Mr. Fernandez's post-arrest statement should occur. Finally and alternatively, because no Miranda warnings were given, suppression pursuant to the Fifth Amendment of Mr. Fernandez's statement should occur.

FACTUAL BACKGROUND

On October 25, 2017, SA Perry and SA Lemmon were working drug interdiction at the Greyhound Bus Terminal in Albuquerque, New Mexico. They were awaiting the eastbound bus that was due to arrive at 9:55 am, traveling through Gallup, New Mexico from Phoenix, Arizona. SA Perry and SA Lemmon were dressed in street clothes and ball caps, and were waiting at the

bus station for the arrival of the bus.[1]  After the eastbound bus arrived, the passengers disembarked and generally waited in the terminal area, during which time the bus was taken to a separate area where it underwent fueling, cleaning, and any necessary mechanical service. Upon information and belief, passengers are encouraged to leave their carry-on luggage on-board.  Layovers in Albuquerque generally last about an hour.

In the present case, the eastbound Greyhound bus from Phoenix–via–Gallup arrived at the Albuquerque station at approximately 9:55 am.  SA Perry and SA Lemmon were waiting for the bus, and upon information and belief, they observed the bus passengers debark from the bus.  The agents then followed the bus to the cleaning bay—a separate location just south of the terminal--whereupon they opened and entered the closed luggage bins and visually (and physically) inspected luggage contained therein.  Also, as is consistent with their prior practice, the agents would have boarded the passenger compartment of the bus, while still in the cleaning bay, to visually and physically inspect any luggage left onboard.  After the cleaning and servicing process, the bus returned to the main terminal whereupon the passengers reboarded.

Mr. Fernandez reboarded the bus, and immediately noticed two individuals who appeared to him as police officers.  In fact, Mr. Fernandez had recently traveled on the greyhound bus and recognized SA Perry as the same individual who had questioned him previously.  Mr. Fernandez took his seat and, as he expected, SA Perry approached and

---

[1] SA Perry and SA Lemmon are documented to have been at the Greyhound Bus station as early as 8:45 a.m, but were likely there even earlier than that.

questioned him regarding his travels.  Upon reviewing the bus ticket, under the name "Frank Dreke", SA Perry recognized Mr. Fernandez and asked him if he had recently traveled by bus, to which Mr. Fernandez replied that he had.  Mr. Fernandez stated that he did not have any luggage, and consented to a search of his person.  After searching with negative results, SA Perry proceeded to contact other passengers.

After conducting a number of consensual encounters, SA Perry stated into his microphone that he was "going to go get that bag", at which point he returned toward the rear of the bus and grabbed a black duffle bag that, apparently, no passenger had claimed as his own. SA Perry can then be heard asking passengers if the bag belonged to them, to which all responded in the negative.  When SA Perry re-approached Mr. Fernandez while carrying the bag, SA Perry claimed that Mr. Fernandez responded in the affirmative and then allegedly consented to SA Perry searching the bag.  SA Perry can be heard opening the bag, and then almost immediately asking Mr. Fernandez to stand.  Mr. Fernandez is then arrested and led off the bus with the assistance of SA Lemmon.  Mr. Fernandez can be heard very clearly stating that the bag was not his.

SA Perry and SA Lemmon remove Mr. Fernandez from the bus, and stand outside the bus, alongside the black duffel.  SA Lemmon stays with Mr. Fernandez while SA Perry continues to search the luggage bins, with the assistance of a Greyhound employee.  Eventually, after several minutes, SA Perry returns to SA Lemmon and Mr. Fernandez, the luggage bins are closed, and the bus departs.

The agents transported Mr. Fernandez to the DEA office, where Mr. Fernandez is processed and interviewed by other task force officers.  Mr. Fernandez repeatedly states that the bag was not his and that he had nothing that he could tell the officers.  The brief recording cuts off mid-sentence, and counsel was informed by the government attorney that the video recording is incomplete because it was "not captured" during the transfer process to the computer.

**ARGUMENT**

The events leading to Mr. Fernandez's arrest on October 25, 2017 were the result of a calculated, unconstitutional, and seemingly routine practice of the involved law enforcement agencies at the Greyhound bus station.  In a case very similar to the present, the Tenth Circuit articulated the nature of this style of interdiction:

> "When the bus arrived at the terminal, the detectives did not have probable cause to believe that illegal drugs were on the bus.  Nor did they have articulable suspicion to suspect the presence of illegal drugs.  The detectives knew only that the west coast is a source area for illegal drugs.  The detectives did not have the passengers' permission to examine their luggage.  Bus officials did not notify the passengers that their luggage was subject to inspection.  What occurred here, plain and simple, was a suspicionless police sweep of a bus in interstate travel."

*United States v. Nicholson*, 144 F.3d 632 (10th Cir. 1998).  Passengers traveling on a commercial bus receive the same degree of constitutional protection and are subject to the same legitimate intrusions on their Fourth Amendment interests as those in private vehicles.  *Portillo-Aguirre,* 311 F.3d 647, 652 (5th Cir. 2002), citing *Florida v. Bostick,* 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

The Fourth Amendment protects "the right of the people to be secure in their . . . effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A search implicating the Fourth Amendment occurs when the government invades a person's "legitimate expectation of privacy." *Smith v. Maryland*, 442 U.S. 735, 740 (1979). A search undertaken without a warrant, subject only to a few, well-established exceptions, is *per se* unreasonable under the Fourth Amendment. A seizure implicating the Fourth Amendment occurs when the government meaningfully interferes with an individual's possessory interests in their property. *See, e.g., U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984). When a defendant moves to suppress evidence obtained as a result of an allegedly unconstitutional search, he has the burden of demonstrating a subjective expectation of privacy that society is prepared to recognize as reasonable. *See United States v. Conway*, 73 F.3d 975, 979 (10th Cir. 1995).

### A.  The physical seizure of the black duffel by SA Perry violated Mr. Fernandez's Fourth Amendment Rights

Personal luggage is an "effect" protected by the Fourth Amendment. *Bond v. United States*, 529 U.S. 334, 336-37 (2000); *United States v. Place*, 462 U.S. 696, 700-01, 103 S.Ct. 2637 (1983). The Fourth Amendment is implicated when there has been a "meaningful interference with an individual's possessory interest in his property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652 (1984). The inquiry in the present case is (1) whether SA Perry seized or interfered with an "effect" of Mr. Fernandez and, if so, (2) whether this seizure/interference was "meaningful" with respect to Mr. Fernandez' possessory interest in the bag.

6

*United States v. Hill*, 805 F.3d 935 (10th Cir. 2015) is instructive.  In *Hill*, SA Small[2] seized a bag that had been placed in the common storage area of the Amtrak Train and proceeded to carry or wheel that bag throughout the train, inquiring of the passengers whether the bag was their's.  Eventually, no passenger claimed ownership of the bag, so SA Small determined that the bag was abandoned.  SA Small proceeded to open and search the bag wherein he found contraband and other items linked to Hill.  Hill was arrested, charged, and ultimately entered a conditional guilty plea, preserving his right to appeal the denial of his motion to suppress.

The Tenth Circuit easily answered the first inquiry—whether SA Small seized or interfered with property of Hill.  The Court answered this question in the affirmative, and placed no legal import on the government's claim that, by disavowing ownership of the bag, Hill somehow decreased his interest in the bag and/or increased SA Small's reasonable suspicion.  805 F.3d at 939-40.  By taking the bag and parading it throughout the train, SA Small interfered with Hill's possessory interest; Hill had effectively been deprived of his "ability to access the bag for his own purposes, on his own time, and at the place where unchecked baggage is properly stowed."  *Id.* at 937.

The Tenth Circuit found the second question a closer one, as the bag in question was neither directly in Hill's possession, but nor was it "checked" or bailed to the commercial carrier for transport.  The Tenth Circuit concluded that a traveler's possessory interest in his luggage "is at its zenith when the luggage is in his direct possession and at its nadir when the luggage has

---

[2] Kevin Small retired from the Drug Enforcement Administration as a Special Agent after many years of service; indeed, for many of those years, he worked alongside, and partnered with, SA Perry.

been checked…" *Id*. at 938.  The lesson drawn by the Tenth Circuit from the caselaw was that courts must be mindful of the nature of the possessory interest implicated.  *Id.*

Hill's interest was "intermediate", as his unchecked, untagged luggage was placed in a common storage area, rather than in a cargo hold or in his direct possession.  As such, Hill could expect that his bag could be moved by other passengers to make room for their bags, but he also retained responsibility for his own bag rather than ceding that responsibility to Amtrak officials.  *Id.*  Hill could expect access to his bag at any time during his travels.  SA Small's actions (taking the bag for his own narcotics interdiction purposes) thus deviated "significantly" from a reasonable traveler's expectations as to how his bag would be treated in the common storage area.  SA Small's actions deprived Hill of his dominion and power over his bag and therefore amounted to a "meaningful" interference with Hill's possessory interest, thereby implicating the Fourth Amendment.  *Id*. at 938-39.

The present case in on all fours with *Hill*.  Mr. Fernandez had placed his luggage on a luggage rack inside the passenger compartment of the Greyhound bus.  Essentially, Mr. Fernandez's luggage was placed in an area akin to the "common storage area" on Amtrak trains.  Further, like the bag in *Hill*, Mr. Fernandez's bag was not checked nor was it tagged, but was placed in a common area open to all passengers.  By placing his luggage inside the passenger compartment (and not below in the sealed cargo bins), Mr. Fernandez reasonably expected access to his luggage at all times; SA Perry's act of grabbing his bag and carrying it up and down the aisle of the bus effectively deprived Mr. Fernandez of access to his bag and "meaningfully

interfered" with his possessory interest.  SA Perry's conduct resulted in a direct violation of Mr. Fernandez's Fourth Amendment rights.

## B.   Because there was no temporal or causal break between Mr. Fernandez's arrest and his subsequent interrogation, his statements should also be suppressed

Mr. Fernandez moves the Court to also suppress the statements that he gave after his arrest.  Whether evidence obtained following a Fourth Amendment violation must be suppressed depends on whether the evidence "has been come at by exploitation of [the] illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (quoting Maguire, *Evidence of Guilt*, 221 (1959)).  For example, to break the causal chain between the violation and an accused's subsequent statement, it is not enough "that the statement meet the Fifth Amendment standard of voluntariness but that it 'be sufficiently an act of free will to purge the primary taint.'" *Brown v. Illinois*, 422 U.S. 590, 602 (1975) (quoting *Wong Sun*, 371 U.S. at 486); *see also Taylor v. Alabama*, 457 U.S. 687, 690 (1982) (Miranda warnings not enough to purge the taint of an unlawful search and seizure).  A statement's voluntariness alone is not sufficient to dispel the effects of the illegal search or seizure because that voluntariness only speaks to Fifth Amendment concerns and does not address the distinct policies and interests of the Fourth Amendment.  *Brown*, 422 U.S. at 600-603; *United States v. Melendez-Garcia*, 28 F.3d 1046, 1053-1055 (10th Cir. 1994).

For that reason, to avoid suppression of evidence—including statements—obtained pursuant to a consent to search following an illegal arrest or detention (in violation of the Fourth

Amendment) the government must prove *both* (1) that the consent was voluntary in fact *and* (2) that there was a break in the causal connection between the illegal detention and the consent. *United States v. Carter*, 360 F.3d 1235, 1243 (10th Cir. 2004); *United States v. McSwain*, 29 F.3d 558, 562, n. 2 (10th Cir. 1994); *Melendez-Garcia*, 28 F.3d at 1053-1055; *United States v. Fernandez*, 18 F.3d 874, 882, n. 7.  Whether or not the accused's consent to search (or speak) was voluntary, the government still must prove the consent was sufficiently attenuated from the illegal detention or arrest to purge the illegality's taint.  That burden is a "heavy" one.  *United States v. Caro*, 248 F.3d 1240, 1247 (10th Cir. 2001); *United States v. Gregory*, 79 F.3d 973, 979 (10th Cir. 1996).

      In the present case, Mr. Fernandez's consent to search his bag directly led to his arrest, which in turn resulted in his transport to the DEA offices and subsequent interrogation by offices.  From the moment of his arrest through his statement and until his eventual booking in jail, Mr. Fernandez remained in the custody the DEA.  As such, the government will not be able to show sufficient attenuation between the unlawful arrest and the subsequent statements.  First, very little time elapsed between Mr. Fernandez's arrest and his later statements; if Mr. Fernandez was arrested at approximately 11:15 am, his statements were taken shortly thereafter, in the early afternoon.  Second, there were no intervening circumstances that broke the causal chain between the illegal seizure of Mr. Fernandez's bag, his alleged consent and resulting arrest, and his statements later provided to agents.  Finally, the purposefulness and flagrancy of SA Perry's conduct is clear: a 20-year veteran of the DEA, having worked with former SA Small and having conducted thousands of interdictions that resulted in hundreds if not

thousands of arrests and federal prosecutions, SA Perry would know that his actions of seizing a bag and walking up and down the aisle of the bus would implicate the bag owner's Fourth Amendment rights. SA Perry's straightforward and blatant misconduct should convince this Court that his violation of the Fourth Amendment was purposeful and flagrant. Consequently, the three *Brown* factors—temporal proximity, lack of intervening circumstances, and flagrancy of the officer's misconduct--weigh heavily against the government. *See Brown v. Illinois*, 422 U.S. at 603; *also see Gregory,* 79 F.3d at 979-80. Suppression is appropriate.

### C. The Statements Taken from Mr. Fernandez were obtained in violation of the Fifth Amendment

"In order to combat the pressures inherent in custodial interrogation and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights." *Miranda v. Arizona*, 384 U.S. 436, 467 (1966) (alteration omitted). "A Miranda warning functions both to reduce the risk that an involuntary or coerced statement will be admitted at trial and to implement the Fifth Amendment's self-incrimination clause." *United States v. Williams*, 435 F.3d 1148, 1152 (9th Cir. 2006). "Thus, if a suspect in custody does not receive an adequate warning effectively apprising him of his rights before he incriminates himself, his statements may not be admitted as evidence against him." *Id*.

Here, there is no evidence that law enforcement gave Mr. Fernandez his Miranda warnings. The incomplete video produced by the government in discovery contains no such warnings, nor do the reports generated by the agents. Accordingly, anything Mr. Fernandez said to the officers is inadmissible at trial.

CONCLUSION

      Jesus Francisco Fernandez moves the Court to suppress all evidence unlawfully obtained by SA Perry and SA Lemmon on October 25, 2017, including all physical evidence seized from his bag at the Greyhound bus station, as well as all statements later taken from him at the DEA station. Mr. Fernandez respectfully moves the Court to conduct an evidentiary hearing wherein evidence can be elicited by the parties on these issues.

      Respectfully Submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas Blvd NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489
email john_robbenhaar@fd.org

*filed electronically on February 12, 2018*
JOHN F. ROBBENHAAR
Assistant Federal Public Defender
*Counsel for Mr. Fernandez*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing pleading was served on Assistant United States Attorney Samuel Hurtado by operation of the Court's CM/ECF electronic filing system and pursuant to the CM/ECF Administrative Procedures Manual §§ 1(a), 7(b)(2), on February 12, 2018.

*filed electronically on February 12, 2018*
JOHN F. ROBBENHAAR