IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                               No. 17-CR-3237- JAP

JESUS FRANCISCO FERNANDEZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On October 15, 2018, Defendant Jesus Francisco Fernandez filed a Motion to Compel Discovery (Motion) (Doc. 76) asking the Court to compel the United States to disclose certain impeachment materials pertaining to Drug Enforcement Administration (DEA) Special Agent Jarrell Perry. The United States opposes the Motion and it is fully briefed.[1] After considering the parties' briefs and relevant law, the Court finds that Defendant's Motion should be granted in part and denied in part.

## BACKGROUND

On November 15, 2017, a federal grand jury returned an indictment charging Defendant with unlawfully, knowingly and intentionally possessing with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (Doc. 10). The charges arise from an encounter Defendant had with DEA Special Agent Perry on a Greyhound bus during a layover at the Greyhound Bus Terminal in Albuquerque, New Mexico on October 25, 2017. On February 12, 2018, Defendant

---

[1] *See* UNITED STATES' RESPONSE TO THE DEFENDANT'S MOTION TO COMPEL DISCOVERY (Response) (Doc. 79); DEFENDANT'S REPLY TO GOVERNMENT RESPONSE TO OPPOSED MOTION TO COMPEL DISCOVERY (Reply) (Doc. 92).

1

filed a motion asking the court to suppress evidence obtained as a result of the October 25, 2017 encounter. (Doc. 21). The Court denied the motion to suppress on October 9, 2018. (*See* Doc. 74). The factual background is fully detailed in the Court's October 9, 2018 Memorandum Opinion and Order (Doc. 74), and the Court will not repeat it here.

In preparation for trial, Defendant filed the present Motion asking the Court to compel the United States to disclose materials relating to a DEA Office of Professional Responsibility (OPR) investigation into Agent Perry that stemmed from concerns raised by the United States Court of Appeals for the Tenth Circuit regarding Agent Perry's conduct in *United States v. de la Campa-Rangel*, 519 F.3d 1258 (10th Cir. 2008). In particular, Defendant seeks disclosure of the DEA OPR report, as well as any written or recorded statements made by Agent Perry regarding his involvement in the *de la Campa-Rangel* prosecution and the resulting DEA OPR investigation. (Doc. 76; Doc. 92). Alternatively, Defendant asks that the Court order the United States to produce the material to the Court for in camera review. (Doc. 76 at 1; Doc. 92 at 1).

In the *de la Campa-Rangel* case, the Tenth Circuit abated the defendant's appeal to allow him to file a 28 U.S.C. § 2255 motion for the district court to consider whether the Government knowingly relied on perjured testimony by Agent Perry who was the case agent and the chief law-enforcement witness at trial. 529 F.3d at 1259. The issue of possible perjury arose because of alleged contradictions between various sworn statements by Agent Perry. *Id.* The defendant filed a § 2255 motion which resulted in the U.S. Magistrate Judge reopening discovery. *See U.S. v. de la Campa-Rangel*, No. CR 5-1154 JAP, Doc. 101. But before the Government produced the requested discovery and before the Court could address the merits of the § 2255 motion, the Government agreed to vacate the sentence and resentence Defendant to a sentence of time served. *See U.S. v. de la Campa-Rangel*, No. CR 5-1154 JAP, Docs. 108 & 109.

2

Defendant contends that the Government is aware of the *de la Campa-Rangel* case and the OPR investigation, as demonstrated by reference to both in other pending cases.[2] (Doc. 76 at 3). Yet, claims Defendant, despite his specific written request in this case for production of information pertaining to the OPR investigation into Agent Perry, the Government did not even acknowledge the *de la Campa-Rangel* matter in its October 15, 2018 response letter to the production request. (*See* Ex. B to Mot., Doc. 76-2).

The United States opposes Defendant's Motion, asserting that Defendant has failed to demonstrate that the information sought is material and that Defendant's request is overbroad because it effectively seeks to "wade through" Agent Perry's entire personnel file - a file to which defendant is not entitled. (Doc. 79 at 4-5). The United States acknowledges its duty under *Brady, Giglio,* and Federal Rule of Evidence 16, indicating that to the extent impeachment material is contained in a federal employee's personnel file it will be provided to Defendant as part of the normal discovery process. (Doc. 79 at 5). Indeed, the United States represents in its Response to Defendant's Motion that it has initiated an official request with the DEA's *Giglio* officer, as required by Department of Justice policy, to search for any *Giglio* material pertaining to Agent Perry. (Doc. 79 at 6-7). The United States indicates that if DEA Headquarters advises the United States that *Giglio* material exists, it will disclose those results as required by law. (Doc. 79 at 7).

---

[2] By way of example, Defendant attaches as Exhibit A to his Motion a September 7, 2018 letter the Government sent to defense counsel in *United States v. Kenja Treron Thomas,* No. CR 18-0458 WJ, 2018 WL 5268203, at *1 (D.N.M. Oct. 23, 2018). The letter reads in relevant part: "Pursuant to the United States' discovery obligations, I write to advise you of a published opinion involving the case agent in the aforementioned case, Special Agent Jarrell Perry. The Tenth Circuit opinion in *United States v. Geraldo de la Campa-Rangel,* 519 F.3d 1258, discusses the testimony of Special Agent Perry and may bear on his credibility as a witness. Special Agent Perry maintains that he did not lie during the course of the *de la Campa-Rangel* matter, and the DEA Office of Professional Responsibility has investigated this matter and determined Special Agent Perry did not engage in misconduct." (Ex. A to Mot, Doc. 76-1).

## LEGAL STANDARD

"During a criminal prosecution, the Federal Rules of Criminal Procedure and the United States Constitution impose upon the United States an obligation to disclose certain evidence to a criminal defendant." *U.S. v. Harmon*, 871 F. Supp. 2d 1125, 1147 (D.N.M. 2012). Specifically, "[d]ue process mandates disclosure by the prosecution of all evidence that favors the defendant and is material either to guilt or to punishment." *U.S. v. Robinson*, 39 F.3d 1115, 1118 (10th Cir. 1994) (internal quotation marks and citation omitted). "Evidence is 'favorable to the defense' if it is exculpatory or impeaching." *Browning v. Trammell*, 717 F.3d 1092, 1094 (10th Cir. 2013). And "evidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Smith v. Cain*, 565 U.S. 73, 75 (2012) (internal quotation marks and citation omitted). The Court's "materiality review does not include speculation. The mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard." *Banks v. Reynolds,* 54 F.3d 1508, 1519 (10th Cir. 1995) (internal quotation marks and citation omitted).

"Impeachment evidence is exculpatory for *Brady* purposes." *U.S. v. Smith*, 534 F.3d 1211, 1222 (10th Cir. 2008); *see also Giglio v. U.S.,* 405 U.S. 150, 154 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule." (quotation marks omitted)). "Generally, even matters outside the present case may potentially be exculpatory and discoverable if it affects the credibility of a testifying case agent." *U.S. v. Kenja Treron Thomas*, No. CR 18-458 WJ, 2018 WL 5268203, at *3 (D. N.M. Oct. 23, 2018); *see also Denver Policeman's Protective Ass'n v. Lichenstein,* 660 F.2d 432, 436 (10th Cir. 1981) ("[W]hen the only prosecution witnesses are the police officers involved, anything that goes to their credibility may be exculpatory.").

**DISCUSSION**

Defendant asks the Court to compel the United States to produce: (1) "the contents and results of the OPR investigation into whether SA Perry committed perjury or other misconduct in the *De la Campa-Rangel* matter," and (2) "any statements either written or recorded made by SA Perry regarding his involvement in the *De la Campa-Rangel* prosecution and the resulting DEA OPR investigation." (Docs. 76, 92). Certainly, any evidence indicating perjury or affecting the credibility of Agent Perry as the case agent and likely chief law enforcement witness at Defendant's trial may potentially be exculpatory for *Brady* purposes and discoverable. But generally, there is no *Brady* right for a defendant to review the entire contents of a testifying law enforcement officer's personnel file to independently make a materiality determination. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 59 (1987) ("A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [Government's] files…this Court has never held…that a defendant alone may make the determination as to the materiality of the information[.]"). Rather, "[i]n the typical case where a defendant makes only a general request for exculpatory material under *Brady*… it is the [Government] that decides which information must be disclosed." *Id.*

In *United States v. Henthorn*, the United States Court of Appeals for the Ninth Circuit addressed the Government's obligation to disclose personnel files of law enforcement witnesses for impeachment purposes. 931 F.2d 29, 30 (9th Cir. 1991). The court noted that the Government has an obligation, upon request from a defendant, to review the personnel files to determine whether they contain information material to a defendant's case. *Id.* at 31. In response to the *Henthorn* opinion, the Department of Justice developed a process for review of personnel files for *Giglio* material. Under this policy, DEA attorneys or staff examine the federal agent's personnel

file and produce any *Brady* or *Giglio* materials to the federal prosecutor who then determines whether to disclose the information to the defendant or to request an in camera review by the Court. *See U.S. v. Jennings,* 960 F.2d 1488, 1491-92 (9th Cir. 1992) ("adherence to this procedure would indicate that the AUSA is fulfilling his responsibility for ensuring Government compliance with *Brady*").

At least two other courts in this district have addressed nearly identical requests for production of possible impeachment evidence related to Agent Perry's conduct in the *de la Campa-Rangel* prosecution. In *United States v. Grobstein*, the court determined that the defendant had properly identified authority "that raises the spectre that Agent Perry engaged in conduct that would cast doubt on his credibility, and has pinpointed specific files that he speculates may contain evidence of such misconduct." No. CR 13-663 MV, 2013 WL 12328891, at *3 (D. N.M. Sept. 3, 2013). However, because the defendant did not identify specific exculpatory evidence withheld by the government, the court determined that it was within the "sole province of the government to determine what material is exculpatory and thus subject to mandatory disclosure." *Id.* Accordingly, the court denied the defendant's motion, while also directing the government to review all of Agent Perry's personnel files, including any OPR investigation files, that "may contain material exculpatory information casting doubt on the credibility of Agent Perry, either as a general matter or with special reference to this case." *Id.* at *4.

Similarly, in *United States v. Kenja Treron Thomas*, the court addressed the defendant's request for disclosure of the OPR report regarding the investigation of Agent Perry, as well as any statements made by Agent Perry about his involvement in the *de la Campa-Rangel* case. No. CR 18-00458 WJ, 2018 WL 5268203, at *1 (D.N.M. Oct. 23, 2018). The court granted the defendant's motion in part and denied it in part. *Id.* The court concluded that defendant failed to make a

sufficient showing for "wholesale production" of the requested categories of documents. The government had represented that it filed an official request for *Giglio* material with the DEA and would produce any *Giglio* or impeachment evidence that was located. *Id.* at *4. Therefore, rather than compel the government to produce the request documents, the court directed the government to search the specific categories of documents identified by the defendant in his motion, to decide whether those materials contain any *Brady, Giglio*, or impeachment evidence, and to produce to the defendant any such material found in Agent Perry's personnel file. *Id.*

Here, Defendant's request for production is nearly identical to the request the defendant made in *Thomas*. The Court similarly concludes that while Defendant has narrowed the universe of documents for which he seeks disclosure, he "seeks a category of documents which may or may not contain exculpatory evidence." *U.S. v. Kenja Treron Thomas,* No. CR 18-00458 WJ, 2018 WL 5268203, at *4 (D.N.M. Oct. 23, 2018). Because Defendant has not made a showing that there is a reasonable probability that the requested documents contain impeachment evidence by identifying specific exculpatory material, it is the Government's obligation to follow the Department of Justice procedure for reviewing the requested categories of documents for any *Giglio* material.

The United States has represented to the Court that it initiated an official request with the DEA, as required by DOJ policy, to search Agent Perry's personnel file for *Giglio* material. (Doc. 79 at 7). If the DEA advises the United States that *Giglio* material has been located, "the United States will disclose those results in full compliance of its *Giglio* duties." (Doc. 79 at 7). Defendant suggests that the U.S. Attorney's Office is not able to remain neutral in deciding the materiality of information because of its own potential misconduct in the *de la Campa-Rangel* prosecution. (Doc. 92 at 11-12). Therefore, Defendant alternatively asks the Court to "step in" to determine whether

information in Agent Perry's file should be disclosed to Defendant. (Doc. 92 at 12). There is no indication that the United States will not comply faithfully with its duty to review Agent Perry's personnel file or the OPR investigation file, so there is no need for the Court to provide a remedy in this regard. *See Jennings*, 960 F.2d at 1492 ("There is also no indication that the government has not or will not comply with its duty faithfully to conduct review of the agents' personnel files. Thus, there is no basis to presume that any illegal conduct must be deterred."). Unless Defendant can point to specific exculpatory material the Government has withheld within the categories of documents he seeks to review "it is within the sole province of the government to determine what material is exculpatory and thus subject to mandatory disclosure." *U.S. v. Grobstein,* No. CR 13-663 MV, 2013 WL 12328891, at *3 (D.N.M. Sept. 3, 2013); *see also U.S. v. Garcia-Martinez*, 730 F. App'x 665, 674 (10th Cir. 2018) (noting that a defendant must make a "'plausible showing' that the government files at issue contain 'material' exculpatory or impeachment information" and listing cases).

## CONCLUSION

The Court concludes that because Defendant has failed to make a particular showing of materiality for blanket disclosure of the requested materials, it is the Government's obligation to search the requested materials. The process for review of a federal agent's personnel file by the DEA under Department of Justice policy is sufficient. Accordingly, the Court will not compel the United States to produce the requested categories of documents in Agent Perry's personnel file. However, the Court will direct the United States, or the appropriate person at the DEA, to review "the contents and results of the OPR investigation" of Agent Perry's conduct in the *de la Campa-Rangel* case and "any statements either written or recorded made by SA Perry regarding his involvement in the *De la Campa-Rangel* prosecution and the resulting DEA OPR investigation,"

for any *Brady, Giglio,* or impeachment evidence. The Government must produce to Defendant any *Brady, Giglio,* or impeachment material located during its review.

IT IS THEREFORE ORDERED that:

1. Defendant's Opposed Motion to Compel (Doc. 76) is GRANTED IN PART and DENIED IN PART.
2. The United States (or the appropriate person at the DEA) must search Agent Perry's personnel file for any *Brady, Giglio*, or impeachment evidence consistent with this Memorandum Opinion and Order.
3. The United States must produce to Defendant any *Brady, Giglio*, or impeachment material located in Agent Perry's file.

*/s/ James A. Parker*
SENIOR UNITED STATES DISTRICT JUDGE