IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                                    No. CR 1:17-03237-001 JAP

JESUS FRANCISCO FERNANDEZ,

Defendant.

**<u>MOTION FOR NEW TRIAL</u>**

JESUS FRANCISCO FERNANDEZ, Defendant, by and through undersigned appointed

counsel, Esperanza Lujan, Assistant Federal Public Defender, moves the court to vacate Mr.

Fernandez' conviction pursuant to Fed. R. Crim. P. 33 in the interests of justice.

## I.      BACKGROUND

Jesus Francisco Fernandez was indicted on one count of possession with intent to

distribute a controlled substance.  Mr. Fernandez pleaded not guilty and proceeded to trial on two

separate occasions.  The first trial commenced on March 4, 2019, and concluded on March 6,

2019 with a hung jury.  The second trial commenced on March 18, 2019 and resulted in a guilty

verdict on March 20, 2019.

The disputed issue at trial was whether Mr. Fernandez was in possession of the black

duffle bag found on a Greyhound bus that contained drugs.  The United States' only piece of

direct evidence is that Mr. Fernandez purportedly claimed that the bag was his and gave Special

Agent Perry permission to search it.  The government primarily relied on circumstantial evidence to tie the bag of drugs to Mr. Fernandez.

The evidence presented at trial regarding possession of the black duffle bag was as follows:

1.      Special Agent Jarrell Perry testified that he approached Mr. Fernandez at the Greyhound Bus Terminal in Albuquerque, NM on October 22, 2017 and conducted a consensual search of Mr. Fernandez' person and his black bag inside the terminal.  No illegal substances or contraband were discovered.  During the course of their conversation, Mr. Fernandez produced medical paperwork reflecting the name of Jesus F. Fernandez Rodriguez, yet his one-way bus ticket from Phoenix, Arizona to Colorado Springs, CO - with a layover in Albuquerque on October 22, 2017- was issued in the name of Frank Dreke.  (3-19-19 Tr. 154-158).[1] Agent Perry also testified that on October 22, 2017 Mr. Fernandez was wearing a black baseball hat that was made of fake leather with what looked like the "New York Yankees symbol in yellow." (3-19-19 Tr. 158:25; 312). Agent Perry later testified, "I thought it said 'New York', but it has ZY on it." (3-19-19 Tr. 173:7).

2.      Three days later on October 25, 2017, Special Agent Perry found a black duffel bag in an overhead compartment on a Greyhound bus in Albuquerque, NM.  The bus was headed to Amarillo, Texas.  Agent Perry and Agent Lemmon testified that Agent Perry believed the bag was suspicious because the bag was not filled to capacity yet it felt overly heavy, and it did not have a name tag.  (3-19-19 Tr. 163; 212; 319-320). Agent Perry waited for passengers to re-

---

[1] Mr. Fernandez' second trial lasted three days, from March 18-20, 2019, and was transcribed in distinct documents. In this motion, Mr. Fernandez refers to portions of those transcripts by the trial day (3-18-19, 3-19-19, or 3-20-19), followed by "Tr." And a page number (e.g. 3-18-19 Tr. 31) or line number (e.g. 3-18-19 Tr. 31:4).

board the bus after it had been serviced to try to locate the owner of the black duffel bag. (3-19-19 Tr. 210; 320-321).

3.      Mr. Fernandez boarded the bus, and when Agent Perry asked Mr. Fernandez if the bag belonged to him, Agent Perry testified that Mr. Fernandez affirmed the bag was his, and that he granted Agent Perry permission to search the bag.  (3-19-19 Tr. 204-205).  Agent Perry testified that he recognized Mr. Fernandez from his previous interaction with him on October 22, 2017.  (3-19-19 Tr. 154; 258-259).  Upon opening the bag, Agent Perry found what he believed were illegal narcotics concealed in the bag and arrested Mr. Fernandez.  Mr. Fernandez immediately told Agent Perry that the bag was not his.  (3-19-19 Tr. 169).

4.      Agent Lemmon testified that the bag was not found near or around Mr. Fernandez' seat.  (3-19-19 Tr. 342).  The bag was found in an overhead compartment area about 3-4 rows behind, and on the opposite side of, where Mr. Fernandez was seated. (3-19-19 Tr. 204; 212; 264).  The bus was left unattended during the layover, and passengers could presumably could get on and off the bus during the layover.  Agent Perry testified that he was not one hundred percent certain that the black bag found on October 25, 2017 was the same bag that Mr. Fernandez possessed on October 22, 2017. (3-19-19 Tr. 271-272).

5.      Agent Perry testified that when the bag was later searched at the DEA office on October 25, 2017, the following items were found inside of the main compartment of the black duffel bag: 1) a black hat with a unique emblem that Agent Perry saw Mr. Fernandez wearing on October 22, 2017[2]; 2) a toiletry kit; and 4) clothing that included a pair of Nike sweatpants in

---

[2] The fact that the unique black hat that Mr. Fernandez was wearing during his prior encounter with Agent Perry on October 22, 2017 was the exact same black hat found in the black duffle bag containing drugs on October 25, 2017 was never mentioned in any DEA report or in any prior testimony given by Agent Perry under oath at a prior suppression hearing or at Mr. Fernandez' first trial. (3-19-19 Tr. 279).

size extra-large, a 3XL shirt, a white t-shirt in size double XL, and a pair of black size 13 Nike shoes. (3-19-19 Tr. 172-173).

6.      Agent Perry also testified that the same medical discharge paperwork that had been presented to him on October 22, 2017 (bearing the name Jesus F. Fernandez Rodriguez) was found by him in an end compartment of the black duffle bag on October 25, 2017.  (3-19-19 Tr. 174-175).  Agent Perry noted that although the black duffle bag had four side compartments, he could not recall from which of the four compartments the medical discharge paperwork was found.  (3-19-19 Tr. 175).  Agent Lemmon admitted during trial that although he testified that the medical paperwork was found by Agent Perry, he had at a prior hearing testified under oath that he could not recall seeing Agent Perry remove the paperwork from the bag (3-19-19 Tr. 340-341).

7.      Agent Lemmon took sequential photos of the search of the bag at the DEA office. However, none of the photos taken by Agent Lemmon showed the white medical paperwork with Mr. Fernandez' name on it *inside* of the black duffle bag (Def.'s Ex. B1-B25)(3-19-19 Tr. 335; 341).  Video surveillance showed Mr. Fernandez boarding the bus with white paperwork in his hand on October 25, 2017.  (Def.'s Ex. A at 10:40-10:53).

8.      Agent Perry testified that on October 25, 2017 when Mr. Fernandez was searched at the DEA office he had two bus tickets issued in the name of Frank Dreke on his person and a re-boarding pass.  (3-19-19 Tr. 159; 184). One of the bus tickets was for travel on October 21-22, 2017 and another ticket was for travel on October 24-25, 2017. *Id.*; (Gov't Ex. 2).

9.      Agent Perry testified that in his training and experience people who transport drugs, or proceeds from drugs, travel with fake names to avoid detection. (3-19-19 Tr. 196).

10.     Lidia Fernandez, Mr. Fernandez' daughter, testified that her father commonly uses the name Frank Dreke, and that Dreke is a family name from Cuba. (3-19-19 Tr. 356)  She also testified that Mr. Fernandez does not fully understand English, and that he speaks with a heavy accent.  (3-19-19 Tr. 358).  Agent Perry testified that Frank is a common nickname for Francisco.  (3-19-19 Tr. 272).

## II.     LEGAL STANDARDS

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  Rule 33, however, "does not define 'interests of justice' and the courts have had little success in trying to generalize its meaning. Nevertheless, courts have interpreted the rule to require a new trial 'in the interests of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir.1989).  The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court.  *United States v. Daniels*, 188 F. Supp 2d 1309, 1311 (D. Kan. 2002).

In ruling on a Rule 33 motion, some courts have determined that any error sufficient to require a reversal on appeal is an adequate ground for granting a new trial. *See United States v. Walters*, 89 F. Supp.2d 1206, 1213 (D. Kan. 2000), aff'd, 28 Fed.Appx. 902 (10th Cir. 2001). Other courts have found that the interest of justice standard is broad enough to cover circumstances where the alleged defect does not constitute a reversible error. *United States v. Vicaria* 12 F.3d 195, at 198-199(11th Cir. 1994) (applying a more discretionary standard).  *See also United States v. Scroggins*, 379 F.3d 233 (5th Cir. 2004)(district court may grant a new trial

in the interest of justice even if it does not find that a specific legal error occurred at trial),
*vacated on other grounds*, 543 U.S. 112 (2005).

In determining whether errors are sufficient to warrant reversal on appeal, the court is
bound by various rules that typically govern appellate review. For example, the court may not
order a new trial for "harmless error." *United States v. Jones*, 818 F.3d 1091, 1101 (10th Cir.
2016).  However, multiple errors that may be "harmless" on their own may, under the cumulative
error doctrine, be considered sufficient to warrant a new trial. *United States v. Barrett*, 496 F.3d
1079, 1121 (10th Cir. 2007)(noting that even if errors are individually harmless, a court must
"consider whether the defendant's substantial rights were affected by the cumulative errors.").
In making a determination under Rule 33, the Court must "balance the alleged errors against the
record as a whole and evaluate the fairness of the trial." *United States v. Mcbride*, 862 F.2d
1316, 1319 (8th Cir. 1988).  *United States v. Allen*, 554 F.2d 398 (10th Cir. 1977).

### III.    TRIAL ERROR REGARDING THE ADMISSION OF OTHER ACTS

The unlawful admission of evidence that results in a serious miscarriage of justice or an
erroneous verdict by the jury may form the basis for granting a new trial. *United States v. Bell*,
584 F.3d 478, 486. (2nd Cir. 2009)  (internal citation omitted).

Defense counsel filed motions in limine asking the Court to exclude the admission at trial
of any reference to Agent Perry's prior encounter and search of Mr. Fernandez at the Greyhound
Bus Terminal on October 22, 2017. [*See* Doc. 99; Doc. 100; Doc. 138; Doc. 148][3].  Defense
counsel argued that reference to the prior encounter and search of Mr. Fernandez should be
excluded under Rule 404(b) because there was no proper purpose for its admission; it had no

---

[3] In this Motion, "Doc." Refers to the District Court Clerk's Record and is followed by the docket control number.

clear and rational association to any fact at issue in the case; and it had no probative value to any material issue in the case. *Id*. The defense further argued that even if deemed admissible under Rule 404(b), any probative value was outweighed by the risk of unfair prejudice under Rule 403. [Doc. 148].  Defense counsel also argued that reference to the prior encounter and search of Mr. Fernandez was not intrinsic evidence and should be excluded as res gestae evidence. [Doc. 148]. (2-26-19 Tr. 36-37).[4]

A hearing was held on February 26, 2019 to resolve the issues raised in the motions in limine.  The government argued that reference to the prior travel was admissible and necessary as res gestae evidence: "the first trip because of the similarities with the second trip, provides context for the crime.  It's necessary for the United States' full presentation of the case, and it's appropriate in order to complete the story of the crime on trial by proving res gestae." (2-26-19 Tr. 38:5-9).  The government further argued:

> Both trips involve Agent Perry making contact with Mr. Fernandez at the Greyhound Bus Station who was traveling under the false name of Frank Dreke and had medical discharge paperwork in his real name…that's important for the jury to know about the circumstances leading up not only to Agent Perry's encounter of the defendant but also his subsequent arrest.

(2-26-19 Tr. 38:11-17).  The government did not did not say that what Mr. Fernandez wore on the first trip was at all important to its case.  As a result, the government failed to suggest a clear chain of inferences that could be drawn from this evidence to an element of the offense charged. *United States v. Martinez*, __ F.3d __, 2019 WL 1984285 (10th Cir. May 6, 2019).

---

[4] In this motion, Mr. Fernandez refers to the transcript of the Motion in Limine Hearing held on February 26, 2019 as "Tr." and a page number (e.g. 2-26-19 Tr. 31-33).

At the motion in limine hearing, the Court asked the government if Agent Perry determined that Frank Dreke was not Mr. Fernandez' correct name during the prior encounter, and the government answered affirmatively (2-26-19 Tr. 34).  However, the government's response was inaccurate because at a prior suppression hearing under oath, Agent Perry testified that during his prior encounter with Mr. Fernandez he did not ask Mr. Fernandez why the name on the medical paperwork differed from that on the bus ticket, he "just assumed that he was traveling under a false name." (9-19-18 Tr. 19:4-5).[5]

The Court ultimately, over defense objection, ruled that reference to the prior encounter and the search of Mr. Fernandez would be admitted at trial to provide some context to Agent Perry's testimony about where he first encountered Mr. Fernandez and realized that he was traveling under a false name. [Doc. 154]. (2-26-19 Tr. 40).

Defense counsel also requested in a written motion in limine that the Court prohibit the Agents from testifying that the Defendant's surprised expressions on the bus, or his actions on the bus such as going to the restroom and looking out, were indicative of consciousness of guilt. [Doc. 100].  The Court ruled that the Agents could describe their observations of the Defendant, but there was to be no testimony about how those actions or expressions were indicative of any kind of mental state. [Doc.154].

At the outset of Mr. Fernandez' first trial on March 4, 2019, the defense made a standing objection to the admission of any reference to Agent Perry's prior encounter and search of Mr. Fernandez.  The Court again ruled that the information would be admitted at trial.  At the commencement of Mr. Fernandez' second trial on March 18, 2019 it was understood that all

---

[5] In this motion, Mr. Fernandez refers to the transcript of the Suppression Hearing held on September 19, 2018 as "Tr." and a page number (e.g. 9-19-18 Tr. 19-20).

prior rulings and exhibits from the first trial would remain in effect except that the use of written transcripts as a guide during the trial would no longer be permitted.

In the case at bar, there is a reasonable possibility that improperly admitted evidence contributed to Mr. Fernandez' conviction at the second trial. Agent Perry testified that people who transport drugs, or proceeds from drugs, attempt to hide their identity by purchasing a ticket under a different name. (3-19-19 Tr. 196).  Allowing the jury to hear that on a previous occasion Mr. Fernandez traveled on a Greyhound bus with a purported fake name, as he did on October 25th, was propensity evidence and it left the jury with an improper inference that Mr. Fernandez was engaged in illicit activity since he did it on more than one occasion. *See United States v. Blackstone*, 56 F3d 1143, 1146 (9th Cir. 1995)(Evidence is prejudicial when "the proffered evidence connects a party with a highly charged public issue, such as narcotics.")(internal citation omitted).

This testimony was particularly prejudicial because when referencing his prior encounter with Mr. Fernandez in the second trial, Agent Perry did not limit his testimony to the fact that Mr. Fernandez was traveling with a bus ticket under the name of Frank Dreke.  Instead, Agent Perry delved into other details about that prior encounter that neither he nor the prosecutor ever mentioned before.  First, he testified that during his prior encounter Mr. Fernandez was wearing a black hat made of fake leather.  (3-19-19 Tr. 158; 173).  Although the hat was so unique that he had never seen it in his lifetime, Agent Perry inaccurately described it as having a "New York Yankees symbol in yellow."  (3-19-19 Tr. 158-157; 173).  He then testified that he subsequently discovered the same black hat *inside* of the black duffle bag containing the drugs on October 25, 2017 when he searched the bag at the DEA office.  (3-19-19 Tr. 172-173).  The improper admission of Agent's Perry's prior encounter with Mr. Fernandez, and the underlying details

including the description of the black hat he was wearing, thereby permitted the government to argue in closing that Mr. Fernandez was in possession of the bag on October 25, 2017.  (3-20-19 Tr. 390; 392).  Had the Court prohibited the government from mentioning this prior encounter, the circumstantial evidence of possession presented at the second trial would have been substantially weaker.  It also could have resulted in a different verdict- as illustrated by the outcome of the first trial at which neither Agent Perry nor the prosecutor ever mentioned how Mr. Fernandez was clothed.

Second, Agent Perry testified that Mr. Fernandez was traveling with a black bag during the prior encounter that looked very similar to the black duffel bag that contained drugs on October 25, 2017. (3-19-19 Tr. 157)  Finally, Agent Perry testified that during the prior encounter when Mr. Fernandez was asked for identification, Mr. Fernandez pulled out medical discharge paperwork from his black bag that had the name of Jesus F. Fernandez Rodriguez written on it.  The same medical discharge paperwork was in the black duffel bag containing drugs on October 25, 2017 according to Agent Perry's testimony.  (3-19-19 Tr. 154-158).

Ultimately, Agent Perry's testimony about the details of the prior encounter allowed the government to argue that the unique black hat and the medical discharge paperwork proved the element of possession.  Under Fed. R. Evid. 403, the admission of details regarding Agent Perry's prior encounter with Mr. Fernandez, including what he was wearing that day and the items that he had in his possession that day, were unduly prejudicial because it permitted the government to stretch its claim at trial that there was strong evidence of Mr. Fernandez' possession of the bag.  This was particularly problematic given that the government relied on the black hat at trial as a critical piece of evidence that proved possession, yet the government never

mentioned the existence of the black hat, or it's nexus to the element of possession at the prior motion in limine hearing, at the suppression hearing, nor at the first trial.

Similarly, the prejudice Mr. Fernandez suffered by having the jury exposed to improper propensity evidence about traveling under a fake name on both bus trips substantially outweighed any probative value under Fed. R. Evid. 403.  The reference to prior travel was also inadmissible as res gestae evidence because it was not an intrinsic part of the offense and it did not provide any type of context that was necessary to tell the government's story.

In its closing and rebuttal argument the government stressed that when taken together the circumstantial evidence in the case – including the use of a false name on two occasions – clearly tied the black bag to Mr. Fernandez, thus proving his possession of the bag.  (3-20-19 Tr. 390; 392).  The improperly admitted evidence of Mr. Fernandez' use of a false name on a prior bus trip, along with details about what he was wearing and the documents he had with him on the prior trip, lead to an improper propensity inference that Mr. Fernandez was engaged in illicit drug activity.  The improper evidence also resulted in prejudice that outweighed any probative value under Fed. R. Evid. 403.  Additionally, the government argued that Agents Lemmon's testimony about Mr. Fernandez' surprised and panicked look on the bus was indicative of Mr. Fernandez' consciousness of guilt.  (3-20-19 Tr. 391-392; 429).  The government's reliance on the use of a false name on two occasions, along with other information Agent Perry learned from his prior encounter with Mr. Fernandez, was cumulative error and resulted in an erroneous jury verdict.

## IV.   WEIGHT AND SUFFICIENCY OF THE EVIDENCE

A defendant may file a motion for a new trial on the ground that the verdict is against the weight of the evidence. When this is the basis for a defendant's motion, the district court may weigh the evidence and consider the credibility of the witnesses. Under a Rule 33 motion, in contrast to Rule 29, the Court need not view all the evidence in the light most favorable to the government, and may instead weigh the evidence in a manner that more accurately describes the proceedings. *Tibbs v. Florida*, 475 U.S. 31, 37-38 & 38 n.12 (1982).

As explained by the Supreme Court in *Tibbs*, the difference between rulings based on the weight of evidence and rulings based on the sufficiency of the evidence:

> "a conviction rests upon insufficient evidence when, even after viewing the evidence in the light most favorable to the prosecution, no rational factfinder could have found the defendant guilty beyond a reasonable doubt.  A reversal based on the weight of the evidence, on the other hand, draws [the court] into questions of credibility.  The "weight of the evidence" refers to a determination by the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other."

457 U.S. at 37-38.  The Tenth Circuit has similarly noted that when "deciding a motion for new trial, the [trial] court may weigh the evidence and consider the credibility of witnesses in determining whether the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred. *United States* v. *Evans*, 42 F.3d 586, 593 (10th Cir. 1994).

In this case, the weight of the evidence mitigates in favor of granting a new trial.  Mr. Fernandez' case was a close one in which the jury could have returned a different verdict, as evidenced by the fact that his first trial ended in a hung jury.  At the second trial, the government argued that Mr. Fernandez' purported admission that the bag was his was direct evidence of his guilt. Agent Perry testified that Mr. Fernandez – whose first language is not English- clearly

understood his questions and clearly admitted that the black bag was his when asked if it belonged to him. (3-19-19 Tr. 151-152; 311; 322). However, the audio of the conversation between Agent Perry and Mr. Fernandez indicated that Mr. Fernandez' answers to many questions were less than clear. (Gov't Ex. 1). In this case, no DNA or fingerprint results tied Mr. Fernandez to the black bag. Agent Perry specifically testified that although he found a toothbrush in the duffle bag, and a DNA swab was taken from Mr. Fernandez, he did not conduct any DNA analysis. (3-19-19 Tr. 297-298). Agent Perry also testified that although he has requested fingerprint analysis in hundreds of other cases, he did not do so in this case. (3-19-19 Tr. 194; 315). There was no testimony that Mr. Fernandez was seen with the black duffle bag on October 25, 2017. Agent Lemmon testified that he never saw the black duffle bag above Mr. Fernandez' seat, or in the seat next to him. (3-19-19 Tr. 342). In sum, there was no direct evidence in this case other than Mr. Fernandez' purported admissions.[6]

The government overwhelming relied on circumstantial evidence to prove the element of possession. Yet this circumstantial evidence, which was premised on the testimony of Agent Lemmon and Agent Perry, was highly questionable. As aforementioned, the government argued during the second trial, for the very first time, that the black bag belonged to Mr. Fernandez because the bag contained the *same* black hat that Agent Perry observed him wearing three days prior to his arrest. (3-19-19 Tr. 169; 171). Agent Perry testified that it was the *same* hat because the yellow lettering symbol, which he inaccurately described initially as a "New York Yankees symbol" (3-19-19 Tr. 158-159), made it so unique that Agent Perry had never seen such a hat "in my lifetime." (3-19-19 Tr. 173:12).

[6] In the first trial, at least one juror believed that Mr. Fernandez' words on the recording, and what they meant, were less than clear. This lead the Court to rule that the transcript of the recorded conversation between Agent Perry and Mr. Fernandez would not be allowed in the second trial. (3-18-19 Tr. 3-5)

During trial, Agent Perry was asked to demonstrate for the jury which items he found inside of the black duffel bag.  Agent Perry opened the main compartment and pulled out clothes, the black hat, and the drugs.  (3-19-19 Tr. 171-173).  He pulled from an end compartment of the bag the white medical paperwork.  (3-19-19 Tr. 174-175).  However, at the first trial commencing on March 4, 2019 when asked to do this same demonstration, Agent Perry never pulled the black hat out of the main compartment, and he pulled the white medical paperwork out of the main compartment instead of an end compartment.  (3-19-19 Tr. 274-277).

The twenty-five (25) photos Agent Lemmon took of the search of the bag do not show the medical paperwork or the black hat *inside* the black duffel bag. (3-19-19 Tr. 341); (Def.'s Ex. B1-B25).  Agent Perry admitted at trial that he had never mentioned the black hat, or that the white paperwork came from an end pocket of the bag, at any prior hearings or at the first trial – nor was such information documented in his official DEA investigation report.  (3-19-19 Tr. 279)  Agent Lemmon testified at trial that he saw Agent Perry remove Mr. Fernandez' medical discharge paperwork from the black bag during the search, yet he had previously testified under oath that he did not recall if he had seen Agent Perry remove the paperwork from the bag. (3-19-19 Tr. 340-341).

Agent Perry also testified at trial that Mr. Fernandez was sitting in an aisle seat as a means to explain that Mr. Fernandez could not have seen the drugs in the bag when Agent Perry first opened the bag. (3-19-19 Tr. 166-167).  After being impeached with his report, and his prior testimony from a suppression hearing where Agent Perry had previously stated Mr. Fernandez was in a window seat, Agent Perry said he had made a mistake before, but that he was now certain Mr. Fernandez was in a window seat. (3-19-19 Tr. 254-257).

14

Agent Perry and Agent Lemmon were not credible witnesses given that their statements about crucial evidence in the case- particularly Agent Perry's testimony about the black hat- were contradicted by their prior testimony under oath.  Agent Perry's testimony  regarding the black hat and it's nexus to the black bag containing the drugs was highly questionable and it affected the weight and sufficiency of the evidence.  Without this testimony, the jury may not have believed that the element of possession had been proven.  The evidence presented at trial, including the impeachment of the agents, indicate that the government failed to carry its burden of proof beyond a reasonable doubt.  The verdict went against the weight of the evidence.

WHEREFORE, Defendant Jesus Fernandez requests the Court vacate the conviction pursuant to Fed. R. Crim. P. 33 in the interests of justice.  Assistant United States Attorney Samuel Hurtado opposes this motion.

Respectfully Submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas Blvd NW, Suite 501
Albuquerque, New Mexico 87102
(505) 346-2489
Fax (505) 346-2494
esperanza_lujan@fd.org

/s/ Esperanza Lujan
ESPERANZA S. LUJAN, AFPD
*Counsel for Mr. Fernandez*

15