# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

   **Plaintiff,**

v.                          No. 17-cr-3237 JAP

**JESUS FRANCISCO FERNANDEZ,**

   **Defendant.**

## MEMORANDUM OPINION AND ORDER

A jury trial was held from March 18, 2019 to March 20, 2019. At the conclusion of the trial the jury returned a Verdict (Doc. 189) finding Defendant Jesus Francisco Fernandez guilty as charged in the Indictment (Doc. 10). On March 29, 2019, Defendant requested an extension of time to file a motion for a new trial, which the Court granted. *See* Order (Doc. 193). On May 10, 2019, Defendant filed his Motion for a New Trial (Motion) (Doc. 203). The United States opposes the Motion.[1] The Court, having considered the parties' briefs, arguments, and applicable law, will deny Defendant's Motion.

## BACKGROUND

On November 15, 2017, a federal grand jury returned an indictment charging Defendant Jesus Francisco Fernandez with unlawfully, knowingly, and intentionally possessing with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (Doc. 10). The charges arise from an encounter Defendant had with Drug Enforcement Administration (DEA) Special

---

[1] *See* UNITED STATES' RESPONSE TO THE DEFENDANT'S MOTION FOR A NEW TRIAL FILED ON MAY 10, 2019 (Response) (Doc. 206).

1

Agents Jarrell Perry and Kirk Lemmon on a Greyhound bus during a layover at the Greyhound bus terminal in Albuquerque, New Mexico on October 25, 2017. On February 12, 2018, Defendant filed a motion asking the Court to suppress evidence obtained as a result of the October 25, 2017 encounter. (Doc. 21). The Court denied the motion to suppress, *see* Memorandum Opinion and Order (Doc. 74), as well as a subsequent motion to reopen the suppression hearing, *see* Memorandum Opinion and Order (Doc. 149). The factual background is fully detailed in the Court's October 9, 2018 Memorandum Opinion and Order (Doc. 74), and the Court will not repeat it in its entirety here.

In preparation for trial, both parties filed several motions in limine. On February 6, 2019, the Court held a hearing on those pretrial motions, and subsequently issued an Order memorializing the Court's oral rulings at the hearing. *See* Order (Doc. 154). Relevant here, the Court granted in part and denied in part Defendant's Motion in Limine No. 4: To Exclude Reference to Prior Travel (Doc. 99). In that motion, Defendant invoked Federal Rules of Evidence 401, 402, 404(a) and 404(b), and asked the Court to exclude any testimony regarding his travel on a Greyhound Bus and encounter with Special Agent Perry at the Albuquerque Greyhound terminal several days prior to his October 25, 2017 arrest.

A jury trial was held from March 4, 2019 to March 6, 2019. At the conclusion of the trial, and after extended deliberation, the jury was unable to reach a unanimous verdict and the Court declared a mistrial. *See* Order Declaring Mistrial (Doc. 172). The case was retried from March 18, 2019 to March 20, 2019. At the conclusion of the second trial, the jury returned a unanimous verdict finding Defendant guilty as charged in the Indictment. *See* Verdict (Doc. 189). Defendant now moves the Court to vacate his conviction and grant a new trial under Federal Rule of Criminal Procedure 33 in the interest of justice. (Doc. 203).

## LEGAL STANDARD

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The decision whether to grant a new trial is within the sound discretion of the Court, *see United States v. Herrera,* 481 F.3d 1266, 1270 (10th Cir. 2007), and the Court is free to weigh the evidence in support of the motion and assess a witness's credibility, *Tibbs v. Florida,* 457 U.S. 31, 37-38, n.11 (1982). Nevertheless, "[a] motion for a new trial is not regarded with favor and is only issued with great caution." *Herrera,* 481 F.3d at 1269-70. Rule 33 presumes that the verdict rendered by the jury is valid, and the burden rests on the moving party to show that a new trial ought to be granted. *United States v. McCourty,* 562 F.3d 458, 476 (2d Cir. 2009).

When evaluating a Rule 33 motion, courts have determined that any error sufficient to require a reversal on appeal is a sufficient basis for granting a new trial. *See, e.g., United States v. Walters,* 89 F. Supp. 2d 1206, 1213 (D. Kan. 2000), *aff'd* 28 Fed. App'x 902 (10th Cir. 2001). Where "no contemporaneous objection was made, the jury's verdict should be set aside only if admission of the statements constituted plain error, that is, '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.'" *United States v. Morris,* No. 10-cr-0317, 2012 WL 1622398 at *1 (D. Colo. May 9, 2012) (quoting *United States v. Harlow,* 444 F.3d 1255, 1261 (10th Cir. 2006) (emphasis in original)).

## DISCUSSION

Defendant states several grounds for a new trial. First, Defendant contends it was trial error to allow Agent Perry to refer in detail to his October 22, 2017 encounter with and search of Defendant at the Greyhound Bus Terminal approximately one week before the subsequent encounter that led to Defendant's arrest. (Doc. 203 at 6-12). Defendant also appears to claim,

albeit briefly, that trial error was committed when the United States purportedly violated the Court's pretrial evidentiary ruling pertaining to Agent Lemmon's observations of Defendant on October 25, 2017. (Doc. 203 at 8, 11). Lastly, Defendant argues that the guilty verdict was against the weight of the evidence. (Doc. 203 at 12-15).

## A. Trial Error Pertaining to Defendant's Prior Encounter with Agent Perry

Defendant asserts that he suffered unfair prejudice by introduction of evidence of Agent Perry's encounter with and search of Defendant inside the Greyhound bus terminal a few days prior to Defendant's October 25, 2017 arrest. The unlawful admission of evidence, particularly the admission of evidence that results in serious miscarriage of justice or an erroneous verdict by the jury, may form the basis for granting a new trial. *United States v. Bell,* 584 F.3d 478, 486 (2d Cir. 2009).

1. <u>Pretrial Evidentiary Ruling</u>

Prior to trial, the Court granted in part and denied in part Defendant's Motion in Limine No. 4: To Exclude Reference to Prior Travel (Doc. 99). During a suppression hearing on September 19, 2018, Agent Perry had testified that when he encountered Defendant on the Greyhound bus on October 25, 2017, he recognized Defendant from a prior encounter inside of the Greyhound bus station four or five days earlier. Defendant also recalled that encounter. During that prior encounter, Defendant was traveling under the name Frank Dreke. When Agent Perry requested identification from Defendant, Defendant provided Agent Perry with medical paperwork bearing the name Jesus F. Fernandez. On that prior occasion, Defendant consented to a pat down search of his person and a search of his black duffel bag. Agent Perry did not discover any contraband or illegal substances as a result of those searches.

Defendant argued in his motion in limine and at the motions hearing that evidence of this

4

prior encounter with Agent Perry was irrelevant and unrelated to Defendant's arrest on October 25, 2017, did not serve any valid purpose otherwise authorized under Federal Rule of Evidence 404(b), and any probative value was substantially outweighed by unfair prejudice to Defendant. (Doc. 99). Although the Court had earlier admitted into evidence Defense Exhibit A, a paired audio/video media file of Agent Perry's encounter with Defendant, in its entirety, Defendant argued for the first time at the motions hearing that the portions of the audio recording referencing the prior encounter should be redacted. (02/06/19 Tr. 11:18-12:7, 26:13-27:9; 30:11-31:9).

The United States argued in response that evidence regarding Defendant's travel prior to October 25, 2017 was not Rule 404(b) evidence, but rather admissible as res gestae. (Doc. 118 at 4-8). Citing to *United States v. Kimball*, 73 F.2d 269, 272 (10th Cir. 1995), the United States suggested that evidence of Defendant's travel a few days before his October 25, 2017 arrest is admissible because it "provides the context for the crime, is necessary to a full presentation of the case, [and] is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae." (Doc. 118 at 4). The United States alternatively argued that even if the Court were to determine that evidence of the prior travel was not intrinsic evidence, the evidence was also admissible under Rule 404(b) for purposes of demonstrating motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident on the part of Defendant. (Doc. 118 at 10).

Following argument by the parties, the Court made the following oral ruling on the motion:

> What I'm going to permit is this. I'll allow the government to play the entirety of the audio recording made on the bus at the time of the second arrest. In order to avoid confusion on the part of the jury, I'll allow some contextual testimony by Agent Perry that he had met the defendant previously at the bus station in Albuquerque, and during that encounter, he had determined that the defendant's real name was Jesus Fernandez based on medical records that he found, and that he had determined that he was traveling under the name of Frank Dreke the same as he was doing on the day of arrest. Now, you may not go beyond that in Agent Perry's testimony to say that all of this is evidence of a propensity to transport

5

drugs. (02/06/19 Tr. 40:5-18).

In response to a question from the United States, the Court clarified that Agent Perry would be able to testify, based on his training and experience, that "people who are drug couriers often travel under a false name," but that Agent Perry could not express a personal opinion that Defendant was transporting drugs because he was traveling under a false name. (02/06/19 Tr. 40:19-41:2, 15-17). To ensure the clarity of the ruling the Court repeated:

> Now, to make sure you understand the limits, [Agent Perry is] not to go into anything about the prior encounter suggesting a pattern of transporting drugs. He can testify that that's where he first encountered Mr. Fernandez and that that is the reason on the second encounter that he realized he again was using a false name because he had established in the first encounter what his real name was. Are we clear on that?

(02/06/19 Tr. 41:18-24). The parties indicated they understood the ruling. After the hearing, the Court memorialized its oral ruling on Defendant's motion in limine in a written order as follows:

> The United States may play the entire audio recording of the encounter between Defendant and Special Agent Perry on the bus on October 25, 2017. To avoid confusion on the part of the jury, the Court will also allow limited contextual testimony by Special Agent Perry. Special Agent Perry may testify that he had previously met Defendant at the Albuquerque bus station, and that during the prior encounter Special Agent Perry determined that Defendant's real name was Jesus Fernandez based on medical records in Defendant's possession and that Defendant was traveling under the name of Frank Dreke just as he was during the second encounter on October 25, 2017. The Court will allow Special Agent Perry to testify that in his experience people who transport drugs often travel under false names, but the Court will not allow Agent Perry to extrapolate that this evidence demonstrates Defendant's propensity to transport drugs in this case. (Doc. 154 at ¶ 4).

1. The First Trial

At the outset of the first trial, Defendant renewed his objection to the admission of evidence regarding Defendant's prior encounter with Agent Perry at the Greyhound bus station a few days before his arrest. (03/04/19 Tr. 105:2-10). During the first trial, Agent Perry testified that he recognized Defendant on October 25, 2017, in part because Defendant handed him a bus ticket and Agent Perry recognized the name on the ticket. (03/05/19 Tr. 25:22-26:4). Agent Perry

6

testified that he had encountered Defendant the Saturday prior to Defendant's arrest while working drug interdiction at the bus station in Albuquerque. (03/05/19 Tr. 26:5-17). Agent Perry briefly explained that he had approached Defendant and asked him questions about his travel. (03/05/19 Tr. 27:9-10). Defendant provided Agent Perry a ticket issued in the name of Frank Dreke. (03/05/19 Tr. 27:11-12). Agent Perry continued that Defendant did not have identification with him. However, Defendant produced medical discharge paperwork from a black duffel bag with the name Jesus F. Fernandez-Rodriguez (03/05/19 Tr. 27:18-28:3, 14-16). Agent Perry testified that he could not say "100 percent for sure," but that the black duffel bag was similar to the bag Agent Perry seized on October 25, 2017 containing the methamphetamine. (03/05/19 Tr. 28:4-10). Agent Perry further recounted that he conducted a consensual search of Defendant's person and bag and did not find any type of contraband. (03/05/19 Tr. 28:25-29:6). During cross-examination, defense counsel asked Agent Perry a number of questions regarding his responses pertaining to Defendant's prior travel. At the close of evidence and after extended deliberation, the jury was unable to reach a unanimous verdict in the first trial and the Court declared a mistrial. (Doc. 172).

2. The Second Trial

At the start of Defendant's second trial, the parties understood that the Court's prior rulings on motions in limine and admission of exhibits would apply to the second trial with the exception that the Court disallowed the United States from providing the jury with a written transcript of the audio recording. During the second trial, Agent Perry testified in relevant part that he found it significant that Defendant was traveling under a name other than his own. (03/19/19 Tr. 196:11-15). Agent Perry expounded that he had "numerous cases to where passengers that were transporting either illegal narcotics or proceeds from illegal narcotics attempt to hide their identity, so they buy a ticket under a different name." (03/19/19 Tr. 196:17-21). He continued that he "had

hundreds of seizures where people are traveling under false names." (03/19/19 Tr. 196:21-22).

The United States ceased that line of questioning and then began playing the audio recording of Agent Perry's encounter with Defendant on October 25, 2017. In reference to the recording, Agent Perry testified that he approached Defendant and asked Defendant permission to speak with him. (03/19/2019 Tr. 198:4). Defendant responded "Again?" to which Agent Perry stated, "I'm sorry?" because he did not yet recognize Defendant. (03/19/2019 Tr. 198:4-9). Agent Perry testified that during the encounter Defendant handed his bus ticket to Agent Perry bearing the name Frank Dreke, at which point Agent Perry asked Defendant if Agent Perry had previously spoken with Defendant. (03/19/19 Tr. 198:24-199:3). Agent Perry stated that Defendant responded "Yes, like four or five days ago." (03/19/19 Tr. 199:2-3). Agent Perry recalled that he had first spoken with Defendant "[o]n the previous Sunday inside the bus station." (03/19/19 Tr. 200:3-4).

Agent Perry recounted that during that prior encounter, Defendant was traveling with a "black duffle bag that was very similar if not the same bag" as the bag containing drugs discovered on October 25, 2017. (03/19/19 Tr. 157:12-25). Agent Perry testified that he searched both Defendant and Defendant's black duffel bag during the earlier encounter and did not find any contraband. (03/19/19 Tr. 158:13-18). Agent Perry also described that Defendant was wearing a black hat "like a leather or a fake leather hat" that "had like the New York Yankees symbol in yellow." (03/19/19 Tr. 159:23-159:1). Later during direct examination, the United States asked Agent Perry to show the jury the contents of the duffel bag containing the methamphetamine that was seized on October 25, 2017. Included in the contents were medical discharge paperwork bearing Defendant's name and a black hat with the words "Zoo York" on the back and "yellow lettering on the front, with a New York emblem on it." (03/19/19 Tr. 172:22-24). Agent Perry testified that this was the same hat he saw Defendant wearing during his prior encounter with

8

Defendant at the Greyhound bus station. (03/19/19 Tr. 173:2-12).

Defendant did not raise a contemporaneous objection to the parts of Agent Perry's direct testimony that he now challenges. On cross-examination, defense counsel questioned Agent Perry about Defendant's use of the name Franke Dreke on his bus ticket. (03/19/19 Tr. 271:4-7, 18-20). In an attempt to impeach Agent Perry, Defense counsel also questioned Agent Perry about the fact that throughout the case proceedings, Agent Perry had never previously testified about the black hat. (03/19/19 Tr. 279:2-19). Agent Perry confirmed that he neither wrote anything about the black hat in his report, nor had he testified previously about the hat despite conceding that it was "an important piece of evidence." (03/19/19 Tr. 279:2-25). Finally, Defendant called as a witness his daughter Lidia Fernandez. Ms. Fernandez testified about her father's regular use of the name Frank Dreke and the origin of the name Dreke on her father's side of the family. (03/19/19 Tr. 356:3-357:8).

3. Defendants' Argument

In his Motion for a New Trial, Defendant contends that "[h]ad the Court prohibited the government from mentioning this prior encounter, the circumstantial evidence of possession presented at the second trial would have been substantially weaker." (Doc. 203 at 10). Defendant continues, "It could also have resulted in a different verdict – as illustrated by the outcome of the first trial at which neither Agent Perry nor the prosecutor ever mentioned how Mr. Fernandez was clothed." (Doc. 203 at 10). Specifically, Defendant maintains that Agent Perry's details regarding the prior encounter allowed the United States to argue that the unique black hat and the medical discharge paperwork proved the possession element of the charged crime by linking Defendant to the bag containing the drugs. (Doc. 203 at 10). Moreover, Defendant also maintains that he was prejudiced by introduction of improper propensity evidence that he had traveled under a fake name

on both Greyhound bus trips. (Doc. 203 at 11).

Because there was no contemporaneous objection to Agent Perry's testimony, the Court will review the evidence and testimony for plain error in light of the context of the entire proceeding. This Court's ruling on Defendant's motion in limine pertaining to Agent Perry's reference to his prior encounter with Defendant was extremely narrow in scope. It was intended to avoid confusing the jury by providing limited context to the conversation between Agent Perry and Defendant captured on the audio recording of the October 25, 2017 encounter. The Court examined briefing by the parties and heard argument on the motion in limine, ultimately determining that admission of prior encounter evidence, as limited by the Court, did not fall within Rule 404(b) and was not barred by Rule 403. Some of the arguments Defendant makes regarding this Court's pretrial evidentiary ruling and in support of a new trial are the same arguments the Court considered in connection with Defendant's motion in limine. Defendant did not file a motion to reconsider that ruling following the February 6, 2019 hearing or following the first trial. The Court stands by its prior analysis and believes it properly admitted limited testimony pertaining to Agent Perry's prior encounter with Defendant. However, Agent Perry's testimony in the second trial about the type of clothing Defendant was wearing during that first encounter was outside the scope of the Court's limited ruling. This testimony revealed, for the first time in the case, that during the initial encounter Defendant was wearing a distinct black hat that was later found by agents inside the black duffel bag containing the methamphetamine seized during the second encounter.

The Court agrees with Defendant that this was an important piece of evidence linking the black duffel bag containing the drugs to Defendant. However, it was not the only evidence creating a link between Defendant and the black duffel bag. As in the first trial, the United States presented

evidence at the second trial that medical discharge paperwork bearing Defendant's name was located in the black duffel bag containing the methamphetamine. The United States also presented evidence that Defendant verbally claimed ownership of the black duffel bag, gave Agent Perry permission to search the bag, and only disclaimed ownership after Agent Perry found the bundles of methamphetamine. Defendant had the opportunity to cross-examine Agent Perry on these issues. Moreover, Defendant presented his own witness who testified that Defendant regularly uses the name "Frank Dreke" to challenge the United States' claim that "Frank Dreke" was a false or fake name. Finally, the Court instructed the jury, as it does in all criminal cases, that "[t]he defendant is not on trial for any act or conduct or offense not alleged in the indictment." (*See* Jury Instruction No. 12, Doc. 185). The Court believes that, in the context of the entire proceedings, the introduction of evidence regarding Defendant's prior travel was not fundamental error and does not merit granting a new trial. Defendant has not met his burden. Accordingly, the Court will not grant a new trial based Agent Perry's testimony in the second trial about his earlier encounter with Defendant.

### B. The United States' Comments in Closing Argument

During closing argument, the United States focused on the possession element of the charged offense. (03/20/19 Tr. 387:14-22). The United States stressed to the jury that on the audio recording Defendant admitted the black bag belonged to him, but even without that direct evidence there was "compelling circumstantial evidence" in the case. (03/20/19 Tr. 389:6-391:13). As one example of circumstantial evidence, the United States referred to Agent Lemmon's testimony during trial that Defendant had a surprised or panicked look on his face when Defendant boarded the bus and saw the agents. (03/20/19 Tr. 391:14-21). The United States asked, "[W]hy else would the defendant display a panicked or surprised look on the bus? I submit to you it's because he knew

11

he was transporting a large amount of methamphetamine." (03/20/19 Tr. 392:22-25). The United States continued that defendant's reaction was "consciousness of guilt." (03/20/19 Tr. 392:1-3).

Defendant had filed a pretrial motion in limine asking the court to exclude any testimony by Agent Lemmon in the form of an opinion interpreting the meaning of any "surprised look" Defendant may have had on his face when he boarded the Greyhound bus and saw the agents.[2] (Doc. 100). Consistent with case law and the Federal Rules of Evidence, the Court granted Defendant's motion in limine regarding improper opinion testimony and held that Special Agent Lemmon could testify about his personal observations of Defendant on the bus but could not testify as to any inference or conclusions he may have drawn from those observations. *See* Order (Doc. 154, ¶ 5). Although not entirely clear from the briefing, Defendant appears to be contending that the United States violated the Court's pre-trial ruling by drawing an inference of guilt in closing argument that the Court had prohibited Agent Lemmon from making in his testimony.

"Prosecutors have considerable latitude to respond to an argument made by opposing counsel." *United States v. Hernandez-Muniz,* 170 F.3d 1007, 1012 (10th Cir. 1999). Defense counsel did not contemporaneously object to the United States' statement in closing arugment. Additionally, prior to closing arguments the Court instructed the jury that it must consider only the evidence that the Court admitted in the case and that "any statements, objections, or arguments made by the lawyers are not evidence in the case." (Jury Instruction No. 6, Doc. 185; 03/20/19 Tr. 377:16-378:4). The Court does not believe the United States' argument was improper. However, even if it were improper for the United States to comment that Defendant's "surprised look" was evidence of "consciousness of guilt," the statement was not so egregious as to constitute a miscarriage of justice, particularly when considered in the context of the lack of contemporaneous

---

[2] *See* DEFENDANT'S MOTION IN LIMINE NO. 5: TO EXCLUDE IMPROPER OPINION TESTIMONY REGARDING DEFENDANT'S ACTIONS (Doc. 100).

objection and the Court's instruction to the jury. Accordingly, the Court will not grant a motion for new trial on this ground.

### C. Weight of the Evidence

Next, Defendant contends that the Court should order a new trial based on insufficiency of the evidence to support his conviction. On a motion for a new trial alleging that the verdict is against the weight of the evidence, the Court may weigh the evidence for itself and determine the credibility of the witnesses. *Laughinghouse v. Risser,* 786 F. Supp. 920, 922 (D. Kan. 1992). This discretionary power should be invoked only in the exceptional case where a jury's verdict "is clearly, decidedly or overwhelmingly against the weight of the evidence." *Escue v. N. Okla. Coll.,* 450 F.3d 1146, 1157 (10th Cir. 2006) (internal quotation marks omitted).

To sustain a conviction for possession of methamphetamine with intent to distribute, the United States was required to prove Defendant (1) knowingly possessed the methamphetamine and (2) intended to distribute it. *See id.*; 21 U.S.C. § 841(a)(1). Possession under § 841(a)(1) may be actual or constructive and the United States may rely on either direct or circumstantial evidence. *United States v. Jenkins,* 175 F.3d 1208, 1216 (10th Cir. 1999). The Tenth Circuit has held that "constructive possession exists when a person not in actual possession knowingly has the power and intent at a given time to exercise dominion or control over an object." *United States v. Little,* 829 F.3d 1177, 1182 (10th Cir. 2016). Defendant argues that the jury verdict in this case was against the weight of the evidence in part because the government "overwhelmingly relied on circumstantial evidence to prove the element of possession" and that such evidence "was highly questionable." (Doc. 203 at 12).

The Court concludes that the United States presented sufficient evidence from which a jury could conclude that Defendant had constructive possession of the methamphetamine to sustain the

conviction under § 841(a)(1). The United States presented evidence linking the black duffel bag in which the methamphetamine was found to Defendant. Both parties played an audio recording of the October 25, 2017 encounter between SA Perry and Defendant on the Greyhound Bus. Although the audio recording is at times unclear, at the point where SA Perry grabs the black bag and shows it to Defendant, a reasonable juror could have concluded that Defendant affirmatively claimed ownership of the bag and then subsequently granted SA Perry permission to search the bag. The United States also presented evidence that medical discharge paperwork located inside the bag bore Defendant's name and that clothing from the bag was consistent with Defendant's size. Agent Perry testified that a black hat with gold writing on it located in the bag was the same hat Defendant had been wearing during the prior encounter at the Greyhound bus station. Agent Perry also testified, and a juror could plausibly discern from the audio recording, that Defendant told him he had been traveling with a brown or black bag during the trip several days earlier. Moreover, Agent Lemmon testified that as Defendant came up the stairs to board the bus, Defendant made eye contact with Agent Lemmon, and "immediately gave a face of surprise, almost panic." (03/19/19 Tr. 322:2-4). A juror could reasonably infer from this testimony that Defendant was nervous because he had methamphetamine on the bus.

Defendant suggests that Agents Perry and Lemmon "were not credible witnesses" and that Agent Perry's testimony regarding a nexus between the black hat and the black Protégé' bag in which the methamphetamine was located "was highly questionable" because he had not mentioned the black hat in prior hearings or during the prior trial. Defendant's arguments go to the weight of conflicting evidence and the credibility of the witnesses, matters properly within the purview of the jury. *See United States v. McKissick,* 204 F.3d 1282, 1289-90 (10th Cir. 2000) ("It is for the jury, as the fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences

from the facts presented."). Although the Court may determine witness credibility on a Rule 33 motion, in general, absent exceptional circumstances, "conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial." *United States v. Kuzniar,* 881 F.2d 466, 470 (7th Cir. 1989) (citing *United States v. Indelicato,* 611 F.2d 376, 387 (1st Cir. 1979) and *Marshall v. United States,* 436 F.2d 155, 156 n.1 (D.C. Cir. 1970)). Defendant had the opportunity to cross-examine both agents, and specifically challenged Agent Perry's testimony linking the black hat and the medical paperwork to the black duffel bag and to Defendant. Defendant also presented testimony of his daughter Lidia Fernandez regarding his use of the name Frank Dreke to counter Agent Perry's testimony about his encounters with passengers who have traveled under a different name while transporting illegal narcotics. The Court concludes that the agents' testimony was not so patently incredible as to justify intrusion upon the jury's verdict.

Finally, by his own admission Defendant recognizes that his "case was a close one in which the jury could have returned a different verdict," suggesting that the guilty verdict was not so overwhelmingly against the weight of the evidence. (Doc. 203 at 12). After reviewing the record, the Court concludes that the United States' evidence and the plausible inferences to be drawn therefrom, considered as a whole, are sufficient to sustain the jury's finding that Defendant knowingly possessed the methamphetamine found in the black duffel bag on October 25, 2017.

IT IS THEREFORE ORDERED THAT Defendant's Motion for New Trial (Doc. 203) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE