IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cr. No. 17-3237 JAP |
| ) | |
| **JESUS FRANCISCO FERNANDEZ,** ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' RESPONSE TO THE DEFENDANT'S
OBJECTIONS TO THE PRESENTENCE REPORT (DOC. 213)**

The United States files this response to the defendant's objections to the presentence report (PSR). The United States requests that the Court deny the defendant's objections *in toto*. The United States submits as follows:

**BACKGROUND**

On November 15, 2017, a federal grand jury returned an Indictment (Doc. 10) charging the defendant with a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), that being possession with intent to distribute 500 grams and more of a mixture and substance containing methamphetamine. The defendant pleaded not guilty and proceeded to trial two times. The first trial resulted in a hung jury on March 6, 2019. The second trial resulted in a guilty verdict on March 20, 2019.

On May 17, 2019, the United States Probation Office disclosed the defendant's PSR. Doc. 204. The defendant's total offense level was calculated at 36. PSR Part D ¶ 68. The defendant's criminal history points were calculated at eight (8) resulting in a criminal history category of IV. PSR Part B ¶ 33. The resulting imprisonment range is 262 to 327 months.

1

PSR Part D ¶ 68.   On June 14, 2019, the defendant filed objections to the PSR (Doc. 213).   The defendant's objections should be denied *in toto*.

## ARGUMENT

The defendant raises five objections, as set forth below:

1. <u>The Defendant Objects To The PSR's Description Of Him As An "Illegal Alien."</u>

The defendant argues that he is not an "illegal alien."   *Defendant's Objections to the PSR*, Doc. 213 at 2.   Such an argument is curious.   The defendant is an immigrant from Cuba and not a citizen of the United States.   As such, he is in the United States unlawfully and correctly described in the PSR as an "illegal alien."

The defendant appears to argue that he has never been deported[1] because he was granted political refugee status in the 1980s and is therefore in the United States lawfully.   While it is true that the defendant has never been deported, his alleged status as a political refugee is irrelevant.   The defendant has never been deported due to his status as a Cuban immigrant – not due to any status as political refugee or claim to United States citizenship.   Historically, the United States has not had diplomatic relations with Cuba that would allow the United States to deport Cuban immigrants.   Moreover, the defendant has produced no documentation to verify that his claim of "political refugee status" from the 1980s is valid, or even existed to begin with. No reference to the defendant's alleged "political refugee status" is contained anywhere in the PSR.   The Court should therefore deny the defendant's objection.   It is baseless.

The defendant also objects, in conclusory fashion, to the PSR's assertion that he was "arrested" by Immigration and Customs Enforcement (ICE) in 2005 and 2015.   *Defendant's*

---

[1] The defendant fled Cuba on a boat to avoid military service and arrived in Miami, Florida in 1980.   He has been in the United States unlawfully ever since.   PSR Part C ¶¶ 55-56.

2

*Objections to the PSR*, Doc. 213 at 2.   In addition to offering no support – or even an explanation – for his "objection," the defendant simply ignores the fact that he was transferred into the custody of ICE (*i.e.*, arrested), albeit briefly, on November 1, 2005.   He was released by ICE on the same day (November 1, 2005) to begin serving a term of parole after he had completed a lengthy sentence of imprisonment for a felony drug trafficking conviction in Colorado.   PSR Part B ¶¶ 29, 34.

An identical sequence of events occurred on September 2, 2015, when the defendant was again transferred into the custody of ICE after he had completed a lengthy sentence of imprisonment for another felony drug trafficking conviction in Colorado.   PSR Part B ¶¶ 30, 34.   He was released by ICE on the same day (September 2, 2015) to begin serving a term of parole.

On both occasions (November 1, 2005 and September 2, 2015), the defendant was transferred into ICE custody.   In other words, he was arrested.   The fact that he was released by ICE on the same day on both occasions does not appreciably alter that analysis.   The defendant's objection is nonsensical and should be rejected by the Court.

    2.   <u>The Defendant Objects To The Entire Offense Conduct Set Forth In The PSR.</u>

The defendant objects to the *entire* offense conduct set forth in the PSR.   *Defendant's Objections to the PSR*, Doc. 213 at 2.   The defendant specifically objects to the "allegation" that there were medical records bearing the defendant's name in the black bag containing a large amount of methamphetamine.   *Id*.   The defendant maintains that he actually had the medical records in his hand at the time he boarded the bus – not in the black bag.   Additionally, the defendant has the audacity to proclaim his innocence, stating that he "objects to the assertion that he possessed the bag" containing the methamphetamine.   *Id*.   The defendant advanced these

same meritless claims at trial and again in his *Motion for a New Trial* (Doc. 203) that the Court denied.  *See Memorandum Opinion and Order* (Doc. 214).

In a sentencing proceeding, the United States need only prove the existence of a fact relevant to sentencing by a preponderance of the evidence, rather than beyond a reasonable doubt.  Here, the United States met its burden above and beyond what is required when it proved at trial beyond a reasonable doubt the offense conduct to which the defendant objects. The jurors rejected the defendant's claims at trial and returned a guilty verdict.  The presumption of innocence no longer applies to the defendant.  He is a convicted man.  In calculating an appropriate sentence, the Guidelines consider a defendant's "offense of conviction and all relevant conduct under [U.S.S.G.] § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context."  U.S.S.G. § 1B1.1. cmt. n.1(H).

The defendant's objection to the offense conduct shows no respect for the jury's verdict. It now cannot be seriously disputed, as the nation enters its third century, that one of the most treasured rights that United States citizens and residents have is the right to a trial by jury.  This fundamental right is a cornerstone of the American criminal justice system, and the Sixth Amendment has long embodied and protected this means of resolving criminal charges that the United States brings.  As Alexander Hamilton noted in Federalist Paper No. 83, "all are satisfied of the utility of the [jury trial] institution, and of its friendly aspect to liberty."  The Federalist No. 83, at 499 (Alexander Hamilton)(Clinton Rossiter ed. 1961).

The right to a jury trial is "no mere procedural formality, but a fundamental reservation of power in our constitutional structure."  *Blakely v. Washington*, 542 U.S. 296, 306 (2004).  In the majority opinion that Justice Antonin Scalia authored, the Supreme Court in *Blakely v.*

*Washington* acknowledged that, "[j]ust as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary." *Id*. As Justice Scalia emphasized through a series of quotations from Thomas Jefferson and John Adams, the right of citizens to participate in the judiciary through jury trial is so fundamental that the "judge's authority to sentence derives wholly from the jury's verdict." *Id*. Here, the jury has now spoken as to the defendant's guilt. As such, the Court should sentence the defendant accordingly and deny the defendant's objection to the offense conduct.

  3. <u>The Defendant Objects To His Own Criminal History.</u>

  The defendant objects, again in conclusory fashion, to the entirety of his criminal history as set forth in the PSR. *See* PSR Part B ¶¶ 29-32. Notably, the defendant offers no support or explanation for his "objection." He simply states that he has requested from the U.S. Probation Office the "documents" it used to compile his criminal history. The defendant has not yet received those documents, but anticipates filing more objections later. *Id*. The defendant's objection is premature and should be denied. The defendant's objection should be denied, even if he did have the documents that he requested from the U.S. Probation Office, for the reasons set forth below.

  In *United States v. Garcia*, 42 F.3d 573 (10th Cir. 1994), the Tenth Circuit, relying upon the Supreme Court's holding in *Custis v. United States*, 511 U.S. 485 (1994), held that, in a sentencing proceeding under the guidelines, a defendant may not collaterally attack a prior conviction except on the ground of a complete denial of counsel. *See* 42 F.3d at 581. Here, the defendant has not explained **any** grounds for his objection to the criminal history section set forth in the PSR.

In order to "bar the use of a prior conviction for sentence enhancement, the defendant must prove by a preponderance of the evidence that the conviction was constitutionally infirm." *United States v. Krejcarek*, 453 F.3d 1290, 1297 (10th Cir. 2006)(citing *United States v. Windle*, 74 F.3d 997, 1001 (10th Cir. 1996)).  *See United States v. Cruz-Alcala*, 338 F.3d 1194, 1197 (10th Cir. 2003)("Once the prosecution establishes the existence of a conviction, the *defendant* must prove by a preponderance of the evidence that the conviction was constitutionally infirm." (emphasis in original)(internal quotation marks omitted).  "Self-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded prior convictions."  *United States v. Krejcarek*, 453 F.3d at 1297 (quoting *Cuppett v. Duckworth*, 8 F.3d 1132, 1139 (7th Cir. 1993)(en banc)).  *See United States v. Wicks*, 995 F.2d 964, 978 (10th Cir. 1993)("Self-serving conclusory statements would be unavailing, of course.").  The defendant has failed to carry his burden.  His objection should therefore be denied.

   4. <u>The Defendant Seeks To Clarify Information Contained In Paragraph 59 Of The PSR Concerning The Scar On His Left Arm.</u>

The defendant seeks to clarify that the scar on his left arm was the result of a vaccination shot – not a "shot" from a bullet.  *See Defendant's Objections to the PSR*, Doc. 213 at 2.  No clarification, however, is necessary.  The United States also interpreted the information contained in paragraph 59 to mean that the scar on the defendant's left arm was the product of a vaccination shot, not a bullet.  There is no mention in the PSR that the defendant has ever been shot or injured as a result of gun-related violence.  As such, the United States agrees with the information set forth in the PSR about the scar on the defendant's left arm.  The United States does not therefore dispute the defendant's statement in this regard.

5. <u>The Defendant Requests A Variance, Or In The Alternative, That The Court Apply The Amount of Methamphetamine-Mixture, As Opposed To The Amount of Pure Methamphetamine, To Arrive At The Base Offense Level.</u>

   A. <u>The Court Should Deny The Defendant's Request For A Downward Variance. The Supreme Court Views The Guideline Range As Presumptively Reasonable.</u>

The defendant has requested a considerable downward variance to a sentence of 120 months of imprisonment. *See Defendant's Objections to the PSR*, Doc. 213. The United States opposes the defendant's request for a downward variance. It is the position of the United States that the PSR correctly and properly calculated the guideline range of 262 months to 327 months of imprisonment. Granted, a district court commits error by applying a "presumption of reasonableness to the advisory guidelines when sentencing." *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007). A district court must independently consider all the sentencing factors set forth in 18 U.S.C. § 3553(a) to determine the appropriate sentence. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). After analyzing all of the § 3553(a) factors and the facts of this case, it is the position of the United States that the Guidelines range is appropriate and no downward variance is warranted.

The United States acknowledges that the PSR stated that a downward variance from the Guidelines range might be warranted. PSR Part F ¶ 85. The PSR is wrong. The PSR presents no compelling justification for a downward variance and the ends of federal criminal sentencing would be undermined should a materially different sentence be imposed. The factors delineated under 18 U.S.C. § 3553(a) yield that a sentence within the Guidelines is appropriate. The United States thus objects to the recommendation for a downward variance from the Guidelines, because no facts or reasoning beyond the length of the guideline imprisonment term itself justify such a variance.

B. The PSR Was Correct To Use The Amount Of Pure Methamphetamine – As Opposed To The Amount Of Methamphetamine Mixture – To Calculate The Base Offense Level.

The defendant urges the Court not to adopt the PSR's base offense level calculation which is based on the amount of pure methamphetamine as opposed to the amount of methamphetamine mixture. The defendant argues that the methamphetamine Guidelines are not based on empirical data. *See Defendant's Objections to the PSR*, Doc. 213. The United States opposes the defendant's request.

The laboratory report in this case indicated that the methamphetamine that the defendant was transporting was 96 percent pure. Because the methamphetamine was over 80 percent pure, it was considered methamphetamine-actual instead of methamphetamine-mixture for sentencing purposes, and the defendant's offense level increased by four levels, adding at least 94 months to his sentence.

In drug trafficking sentencing cases, courts calculate the initial true Guidelines range using the Drug Quantity Table at U.S.S.G. § 2D1.1(c). Note (B) to the Drug Quantity Table specifies that a court sentencing for an offense involving a mixture of methamphetamine with another inert substance should "use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), *whichever is greater*." U.S.S.G. § 2D1.1(c) n.(B)(emphasis added). *See United States v. Davis*, 599 F. App'x 815, 817 (10th Cir. 2013)(Holloway, J.)(unpublished)("The Guidelines dictate that a defendant's advisory sentencing range for methamphetamine distribution is to be calculated using whichever drug weight – actual or mixed – would produce the greater offense level."). In calculating the correct Guidelines range, the Court does not have the discretion to

ignore Note (B) to the drug quantity table.

This decision was a deliberate move on the part of the Sentencing Commission to "increase the offense level for methamphetamine traffickers whose offenses involved purer methamphetamine mixtures," because drug purity "is probative of the defendant's role or position in the chain of distribution." *United States v. Baez Perez*, 515 F. App'x 866, 868 (11th Cir. 2013)(per curiam)(quotations omitted)(unpublished). The difference can result in significantly different sentences:

> Under the Tables, one gram of actual methamphetamine is equivalent to twenty kilograms of marijuana, and one gram of methamphetamine mixture is equivalent to two kilograms of marijuana. In other words, a ten-to-one ratio is employed in calculating sentences for actual methamphetamine versus methamphetamine mixture in the Guidelines.

*United States v. Davis*, 599 F. App'x 815, 817 (10th Cir. 2013)(rejecting defendant's challenge to the sentencing disparity); *United States v. Kort*, 440 F. App'x 678, 685 (10th Cir. 2011)(Brorby, J.)(unpublished)("[I]t is evident the Sentencing Commission recommends a higher offense level for 'Ice' methamphetamine, in part, because a drug of such high purity can be 'cut' with other substances for distribution in larger quantities.").

Flaws in the base offense level calculation are reversible procedural error. *See United States v. Dighera*, No. 05-40033-01-SAC, 2006 WL 1302139, at *2 (D. Kan. Apr. 17, 2006)(Crow, J.)(unpublished)("To not apply [the base offense level] provision in this fashion would be error under the Guidelines."). In *United States v. Gigley*, 213 F.3d 509, 519 (10th Cir. 2000)(Baldock, J.), for example, the United States District Court for the District of Kansas used the mixture weight of methamphetamine rather than the weight of the pure substance, resulting in a base offense level of 32 instead of the correct level of 36. 213 F.3d at 519. The Tenth

9

Circuit remanded the case for new calculations, explaining that "The district court should have used the quantity of methamphetamine (actual) to find the base offense level because it produces a higher sentence." 213 F.3d at 519.

The Guidelines are an expression of the will of the people as expressed through its elected political representatives. The Guidelines represent "eighteen years' worth of careful consideration of the proper sentence for federal offenses." *United States v. Cage*, 451 F.3d at 593 (internal quotation marks omitted). They also help to prevent unwarranted sentencing disparities across the nation's 94 judicial districts. *See United States v. Nolf*, 30 F. Supp. 3d 1200, 1226 (D.N.M. June 20, 2014)(Browning, J.). Further, the Guidelines remain the "framework for sentencing," and all district court sentencing proceedings must begin with the correct calculation of the Guidelines range. *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013)(Sotomayor, J.). *See Gall v. United States*, 552 U.S. at 49-50 ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). The calculation of the Guidelines range must include a proper calculation of the base offense level. *See* U.S.S.G. § 1B1.1. Here, a proper calculation of the base offense level begins with the amount of pure methamphetamine, not methamphetamine mixture.

        C. There Is No Evidence Showing That The Defendant's Role Is **Only** That Of A Drug Courier.

"Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of drugs." U.S.S.G. § 2D1.1, cmt. n.27(c). Commensurate with that theory, the United

States Sentencing Commission imposed harsher sentencing Guidelines ranges for crimes involving drugs of high purity, which is why the defendant here faces a Guidelines range of 262 to 327 months of imprisonment for trafficking methamphetamine instead of the 168 to 210 month range he would have faced had the methamphetamine been less pure.  The problem, the defendant contends, is that he neither played a prominent role in the drug enterprise, nor was he in close proximity to the source of the drugs.  Instead, he claims that he was a low-level courier. *See Defendant's Objections to the PSR*, Doc. 213.  He is wrong.

As an initial matter, it is disingenuous for the defendant to assert that he is a low-level courier while simultaneously proclaiming his innocence.  *Id*. at 2 (the defendant "objects to the assertion that he possessed the bag" containing methamphetamine).  More importantly, the defendant offers no evidence to support his argument that he is only a low-level courier.  There is no information (other than the offense conduct) about the defendant's role or whether there were other participants involved in the offense.  For this reason, the PSR was correct not to apply a role adjustment as a minor participant (*i.e.*, a courier).  PSR Part A ¶¶ 11, 18.  The defendant treats the role adjustment almost as a matter of right, to be disproved, rather than an affirmative burden on the defendant – a burden that he has failed to satisfy.  *See United States v. Virgen-Chavarin*, 350 F.3d 1122, 1131 (10th Cir. 2003)(acknowledging that a "defendant has the burden of establishing, by a preponderance of the evidence, that he is entitled to a reduction in [his] base offense level under § 3B1.2")(*quoting United States v. Onheiber*, 173 F.3d 1254, 1258 (10th Cir.1999)).

Notably, the instant offense marks the defendant's third felony conviction for a drug offense.  It is fair to assume that the defendant had a more prominent role in drug trafficking

11

than that of a simple courier and knew what he was transporting. Even assuming arguendo that he did not know the exact amount of methamphetamine that he was transporting, he certainly realized that he was dealing with a sophisticated interstate drug trafficking organization. As such, his base offense level is appropriately driven by the quantity of pure methamphetamine that he knowingly transported and accurately reflects the severity of his offense. Indeed, the sheer quantity of pure methamphetamine in this case suggests that much of the defendant's drug trafficking history is just simply not contained in the PSR. His lengthy criminal history exerts strong pressure on a sentence with the contemplated Guidelines range.

## CONCLUSION

The Court should deny the defendant's objections. They are meritless. The filing of this document in CM/ECF caused a copy to be served electronically on Esperanza S. Luján, counsel for the defendant.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*Electronically filed*
SAMUEL A. HURTADO
Assistant United States Attorney
Post Office Box 607
Albuquerque, New Mexico 87103
(505) 224-1537