E UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JESUS FRANCISCO FERNANDEZ,

      Petitioner,

v.                                                                        No. 23-cv-00171-WJ
                                                                          No. 17-cr-03237-WJ-1

UNITED STATES OF AMERICA,

      Respondent.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Petitioner Jesus Francisco Fernandez's Amended

Motion Under § 2255 to Vacate, Set Aside, or Correct Sentence, filed March 28, 2024. (Doc. 17).[1]

Mr. Fernandez challenges the validity of his conviction on the ground that he was deprived of the

right to counsel guaranteed by the Sixth Amendment to the United States Constitution.  Having

reviewed the Motion, Respondent USA's answer, Mr. Fernandez's Reply, the dockets in this and

the related criminal case, and the relevant law, the Court finds that the Motion should be denied.

Mr. Fernandez's request for a certificate of appealability shall be granted.

### BACKGROUND

The following facts are taken from the Tenth Circuit's Opinion affirming Fernandez's

conviction, *United States v. Fernandez*, 24 F.4th 1321, 1324–26 (10th Cir.), cert. denied, 143 S.

Ct. 303, 214 L. Ed. 2d 132 (2022), and from the docket in the criminal case.

> Greyhound buses arriving at the Albuquerque terminal often stop for a layover.
> Passengers disembark so that the bus may be cleaned and refueled in a separate
> wash bay and maintenance area. During such layovers Jarrell Perry, a special agent
> for the United States Drug Enforcement Administration (DEA), regularly conducts

---

[1] Unless otherwise indicated, "Doc." citations refer to the civil case.

what he calls "checking the bus." He looks at luggage on the bus for signs of drug trafficking after the bus has been serviced and before the passengers reboard. Examining luggage may include looking for name tags (a lack of which raises suspicion), lifting bags to gauge weight, and smelling bags for substances often used to mask the scent of drugs (such as dryer sheets, perfume, mustard, or coffee). He then speaks to passengers after they reboard, looking for suspicious behavior. Once he checks the bus, Agent Perry talks to passengers who had originally been on the bus but are now waiting inside the terminal for the bus to which they will transfer.

*Fernandez*, 24 F. 4th at 1324.

On the day relevant to this case, Agent Perry was on duty at the bus station with DEA special agent Kirk Lemmon. *Id.* at 1325.  A Greyhound bus arrived, the passengers got off, and the bus was cleaned and refueled. *Id.*  Before the passengers reboarded, the agents boarded the bus and began examining the luggage stored inside. *Id.*

Agent Perry noticed a large black duffel bag in the overhead compartment near the rear . . . of the bus. The bag was "drooping," because it was not filled to capacity. But when he lifted the bag, it felt "very, very heavy." It had no name tag. He surmised that the bag contained illegal narcotics. He passed the bag to Agent Lemmon to show him what he had observed and then returned the bag to the overhead compartment. Altogether, this interaction with the bag lasted about 30 seconds. Agent Perry told Agent Lemmon that he wanted to find out who owned the bag. The officers then left the bus and it was driven to the boarding area.

*Id.*

The agents reboarded the bus as the passengers began to get on. As the passengers were taking their seats, Agent Perry approached each of them, identified himself as a law-enforcement officer, asked about travel plans and luggage, and sometimes asked to search the passenger's belongings. *Id.*  Eventually, Agent Perry approached Mr. Fernandez, displayed his DEA badge, and asked to talk with him. *Id.*  In the ensuing conversation, Mr. Fernandez denied having any luggage with him. *Id.* As no passenger claimed the black duffel bag that had piqued the agents' interest, "Agent Perry grabbed the black duffel bag and, starting from the rear of the bus, carried the bag up the aisle, asking each passenger about the bag. Once he reached Mr. Fernandez, the agent asked if the bag was his. Mr. Fernandez replied, 'Yeah, that's my bag,' and asked, 'You want

2

to check it out?'" After getting Mr. Fernandez's express permission to search the bag, Agent perry placed it in the vacant seat in front of Mr. Fernandez, opened it, and discovered a quantify of methamphetamine sufficient to support a possession with intent to distribute conviction. *Id*. at 1326.

In a pre-trial motion to suppress, Mr. Fernandez's defense counsel, an assistant Federal Public Defender (hereinafter "Defense Counsel") argued "when Agent Perry grabbed the black duffel bag off the overhead rack and carried it from passenger to passenger, the agent unlawfully seized the bag." *United States v. Fernandez*, 24 F.4th at 1330. Ultimately, the trial court denied the suppression motion, finding the Mr. Fernandez had abandoned the bag. *Id.* at 1330; *see* Cr. Doc. 74 ("Suppression Order"). Of relevance to this case, however, is an alternative argument for suppression: whether Agent Perry's initial interaction with the duffel bag constituted an unlawful "pre-search."

To place this issue in legal context, it is established that a law enforcement officer's "probing tactile examination" or "physical manipulation" of bus passenger's carry-on luggage is a "search[.]" *Bond v. U.S.*, 529 U.S. 334, 338-39 (2000).  This legal principle is based on the Fourth Amendment, which prohibits "unreasonable" governmental searches and from a judicially recognized societal expectation that in using a common luggage area, one would expect that their luggage might be handled or moved (i.e., by fellow bus passengers or by employees), but one would not reasonably expect it to be intrusively manipulated or examined.  *Bond v. U.S.*, 529 U.S. 334, 338-39 (2000).

Defense Counsel did not raise the pre-search issue until the suppression hearing. Then, it arose as follows: responding to the trial court's query, Agent Perry testified that his purpose in picking up the bags when the passengers were off the bus was to see how heavy they are, whether

they have a name tag, to look at the bag from all sides, and sometimes to smell them. (Cr. Doc. 104 at 47). Later, on cross examination, Defense Counsel asked Agent Perry whether he had "squeezed" or "burped" the bag, which the agent testified he had not. (Cr. Doc. 104 at 67-68). Agent Lemmon testified to the same effect. (Cr. Doc. 105 at 15). Defense Counsel addressed the Court regarding the pre-search during closing argument at the suppression hearing. By that time, the trial court had effectively held that the agents' testimony was credible, stating: "The direct testimony by both is that [Agent Perry] did not manipulate or squeeze the bag" (Cr. Doc. 105 at 68); *accord* (Cr. Doc. 74 at 2) (finding in the Suppression Order that "[n]either agent manipulated, squeezed, or opened the bag."). In closing, Defense Counsel stated that, although "inferences [could] be drawn" concerning whether there was "Bond violation" from Agent Perry's initial encounter with the bag," the trial court was concededly correct in observing that "the direct testimony is the agents . . . didn't do anything untoward to the bag.  They didn't squeeze it. They didn't feel the contents." (Cr. Doc. 105 at 69-70).

This portion of Defense Counsel's closing argument prompted the trial court to address the "unlawful 'pre-search' challenge" in its Suppression Order.  (Cr. Doc. 74 at 7-9, see 7 n.3) (Holding that although it was not raised in the suppression motion, the issue would be fully addressed because "counsel suggested during closing argument that one could infer an improper warrantless pre-search of the bag before the passengers boarded the bus."). Following an analysis that need not be reiterated here, the trial court concluded,

> It is not unusual on a common carrier for other passengers to push, move, or even momentarily remove an item from a common luggage area . . . to make room for their own carry-on bags. [Agent] Perry's actions did not depart from the type of handling a commercial bus passenger would reasonably expect his baggage to be subjected to, and therefore did not constitute search within the meaning of the Fourth Amendment.

(Cr. Doc. 74 at 8-9).

After trial, Mr. Fernandez appealed his conviction to the Tenth Circuit. On appeal, he was represented by a different attorney who was also an assistant Federal Public Defender ("Appellate Counsel"). Appellate Counsel raised a new and nuanced pre-search theory, focused on the testimony by the agents that the held the bag for "about 30 seconds." *Fernandez*, 24 F. 4th at 1328. Appellate Counsel argued that the agents' "handling of [the bag] for that long constituted an illegal search even if the agents did not squeeze or manipulate" it. *Id.* The Tenth Circuit declined to consider this argument which, it held, had not been preserved because it had not been particularly raised as grounds for suppression in the trial court. *Id.*

Mr. Fernandez sought a petition for a writ of certiorari challenging the Tenth Circuit's preservation holding. *See* case no. 20-2106. The Supreme Court denied the petition. *Id.*

In this habeas case, Mr. Fernandez argues that Defense Counsel's failure to raise the "lifting duration" argument in support of the motion to suppress constituted ineffective assistance of counsel.

**DISCUSSION**

A. 28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a federal prisoner "may move the court which imposed [his] sentence to vacate, set aside or correct [his] sentence," when "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). To state a cognizable claim for relief under § 2255, a petitioner must allege that the "error constituted a fundamental defect which inherently result[ed] in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979), *superseded by statute on other grounds as stated in U.S. v. Akinsade*, 686 F.3d 248 (4th Cir. 2012) (internal quotation marks and citation omitted). A court must presume "that the proceedings leading to the conviction were correct." *Klein v. United States*,

880 F.2d 250, 253 (10th Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)).

    B.  <u>Standards Governing an Ineffective Assistance of Counsel Habeas Claim</u>

        The Sixth Amendment to the United States Constitution guarantees a defendant the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). Accordingly, a criminal conviction secured against a defendant who did not have the effective assistance of counsel is subject to collateral attack under § 2255 based on a theory of ineffective assistance of counsel. ("IAC"). To prevail on an IAC claim, a habeas petitioner must show "that: (1) his attorney's "representation fell below an objective standard of reasonableness," *and* (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Maley*, 1 F. 4th 816, 820 (10th Cir. 2021); *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). These requirements may be addressed in in any order, and the claim fails unless both are satisfied. *United States v. Barrett*, 797 F.3d 1207, 1214 (10th Cir. 2015) (citation omitted). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

        Where, as here, the trial record is uncontested, an IAC claim is an issue of law. *Maley*, 1 F. 4th at 820; *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011). Having reviewed the dockets, the governing law, and the parties' briefs, the Court has determined that the Court will not hold an evidentiary hearing. *See* 28 U.S.C. § 2255(b) (A hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

    C.  <u>Analysis</u>

    1.  <u>Fernandez's Objective Standard of Reasonableness Argument</u>

        Mr. Fernandez argues that Defense Counsel exhibited professional incompetence by not raising the lifting-duration argument with sufficient particularity at the suppression hearing

because, in doing so, Defense Counsel carelessly ignored the "long established Tenth Circuit preservation and waiver standards. (Doc. 14 at 8) ("It is clear that the waiver here was not the sort of conscious reasonably informed decision" that courts construe as strategic; "it was accidental, not intentional"). In support of the premise that failing to preserve the lifting-duration argument for appeal demonstrates Defense Counsel's incompetence instead of a reasoned choice, Mr. Fernandez argues (1) that he, personally, did not intend to waive the lifting-duration argument and, "indeed did not understand that it *had* been waived until the Tenth Circuit refused" to consider it (Doc. 17 at 6); and (2) that Defense Counsel "obviously believed the issue had been preserved sufficiently to argue on his direct appeal[.]" (Doc. 17 at 8).

Regarding the second point, two different attorneys represented Mr. Fernandez at the appellate and trial stages of the criminal case. Mr. Fernandez's argument that Defense Counsel's state of mind at the time of the suppression hearing is evident from the after-the-fact argument raised by Appellate Counsel is not persuasive. That Defense Counsel forwent a theory that Appellate Counsel later pursued likely reflects a difference in their respective perception of the value of advancing that theory. *See Strickland* 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."). Faced with a strategic choice among countless conceivable suppression arguments to pursue in this case, Defense Counsel chose to forgo the lifting-duration argument which, if successful would mark a significant expansion of Fourth Amendment law, in favor of other theories. Indulging the strong presumption that Defense Counsel acted reasonably, this choice reflected a reasonable level of competence, at least. That Appellate Counsel later perceived value in pursuing an argument that (1) was not preserved, and (2) would mark an expansion existing Fourth Amendment law reflects neither Defense Counsel's state of

mind prior to trial nor Defense Counsel's unfamiliarity with the Tenth Circuit's preservation standards.

Even assuming that the appellate brief demonstrated Defense Counsel's state of mind after an adverse trial verdict, however, the argument would fail. Counsel's subjective state of mind is not relevant in the IAC inquiry. *Harrington v. Richter*, 562 U.S. 86, 109 (2011). The relevant inquiry is into the challenged conduct. *Id.* In making this inquiry, the Court is required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689. To fairly assess the conduct, the Court must "eliminate the distorting effects of hindsight" by (1) reconstructing the relevant circumstances, and (2) evaluating it from counsel's perspective at the time. *Strickland*, 466 U.S. at 689.

The relevant circumstances are set forth in the background section of this Opinion. Summarized, Agents Perry and Lemmon had testified that their initial interaction with Mr. Fernandez's bag was limited to picking it up, holding it, and perhaps smelling it. Neither agent had manipulated or squeezed it. In closing argument at the suppression hearing, Defense Counsel extemporaneously shared his perspective on the viability of a *Bond* pre-search argument, effectively conceding that such argument—though theoretically meritorious—was not strong. Forgoing that theory, he pursued another. The trial court nevertheless addressed the merits of the pre-search theory in its Suppression Order, concluding, based on existing Tenth Circuit and Supreme Court precedent, that the agents had not conducted a pre-search. On appeal, Mr. Fernandez did not challenge the trial court's rationale that since the agents did not squeeze or manipulate the bag, they did not pre-search it. *Fernandez*, 24 F.4th at 1328 (stating "Mr. Fernandez's argues that [the agents'] handling of [the bag] for that [30 seconds] constituted an illegal search even if the agents did not squeeze or manipulate the bag[.]. Thus, ostensibly

conceding on appeal that the trial court correctly concluded that the agents physical handling, sniffing, and observation of the bag was not a pre-search.

Based on the foregoing, Defense Counsel's perspective at the suppression hearing is reasonably clear—to the extent that Defense Counsel contemplated raising pre-search argument, it was based only on the "tactile examination" prohibition in *Bond*. Nothing in the suppression record supports the inference that Defense Counsel carelessly disregarded the Tenth Circuit's waiver and preservation standards by not raising the lifting-duration argument. Instead, Defense Counsel either had not thought of this theory at the time, or having thought of it, had decided not to pursue it. As the record shows Defense Counsel's conduct was reasonable at the time, the Court rejects Mr. Fernandez's contrary, distorted-by-hindsight, reasoning.

To the extent Mr. Fernandez's argument suggests that Defense Counsel was ineffective for not allowing him to dictate which, among many potential legal theories should support the suppression motion, it is unpersuasive. An attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy. *Fla. v. Nixon*, 543 U.S. 175, 187 (2004), quoting *Strickland,* 466 U.S., at 688. That obligation applies strictly to basic trial rights such as "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Id.*  It does, however, not require counsel to obtain the defendant's consent to every tactical decision. *Id.* Rather, "an attorney has authority to manage most aspects of the defense without obtaining his client's approval." *Id.* (citing *Taylor v. Illinois,* 484 U.S. 400, 417–418 (1988)). Defense Counsel did not violate a professional or legal obligation to Mr. Fernandez by excluding the novel and highly nuanced "lifting-duration" argument at the suppression hearing. This tactical decision was well within the purview of Defense Counsel's professional discretion.

2.  Mr. Fernandez's Prejudice Argument

Mr. Fernandez argues that but for Counsel's failure to raise the lifting duration argument, there is a reasonable probability that the incriminating evidence found in the bag would have been suppressed and, ultimately, he would not have been convicted. (Doc. 17). The cases Mr. Fernandez cites in support of this proposition are not helpful to him. *See* Doc. 17 at 11. In each case Mr. Fernandez cites, the unlawful search involved some variation of the probing, tactile examination prohibited in *Bond*. *See Bond*, 529 U.S. at 335 (agent "squeezed the soft luggage . . . passengers had placed in the overhead storage space"); *United States v. Nicholson*, 144 F.3d 632, 634 (10th Cir. 1998) (agent manipulated the bag by feeling its sides with his palms); *United States v. Johnson*, 43 F.3d 1100 at 1112 (10th Cir. 2022) (finding the agent did a "probing tactile examination" of a bundle inside a bag); *United States v. Hernandez*, 279 F.3d 302, 305 (5th Cir. 2002) (agent "manipulated the suitcase by pressing on the outside of it with his hands"); *United States v. Jenkins*, 396 F.3d 751, 755 (6th Cir. 2005) (discussing an officer's feeling, moving and handling bags in a motel room while waiting for a search warrant); *United States v. Ellis*, 330 F.3d 677, 678 (5th Cir. 2003) (agent squeezed luggage "'all the way around'" to check for soft spots and did a squeeze-and-sniff examination); *United States v. Lord*, 230 F. App'x 511, 514 (6th Cir. 2007) (agent squeezed and grabbed a closed case in the defendant's closet); *MacWade v. Kelly*, 460 F.3d 260, 270, 272-73 (2d Cir. 2006) (upholding the constitutionality of New York City's "container inspection program" pursuant to which subway riders may be subject to searches that allows officers to approach subway passengers, open their carry on luggage and manipulate the contents, and considering the *Bond* holding in the analysis).

The Court rejects Mr. Fernandez's argument that, had Defense Counsel raised this argument at the suppression hearing, there is a reasonable probability that the trial court would

have suppressed the incriminating evidence. On the contrary, the controlling case law establishes that luggage stored in an overhead rack may be held by its handles, moved around, and sniffed without infringing on a reasonable expectation of privacy. *United States v. Garcia*, 42 F.3d 604, 606 (10th Cir. 1994) (sniffing); *United States v. Garcia*, 42 F.3d 604, 606 (10th Cir. 1994) (sniffing and lifting to feel weight); *Nicholson*, 144 F.3d at 637 (moving and handling). Mr. Fernandez has not cited, and the Court in its independent research has not found, any binding or persuasive case law supporting the lifting-duration argument.

It is conceivable that *Bond*'s holding may be expanded as societal norms and case law evolve. And the Court recognizes that among the many strategic and tactical choices facing defense attorneys, one of them is to consider whether the facts of a given case support an argument in favor of expanding Fourth Amendment protections. Nevertheless, it was reasonable, in this case, for Defense Counsel to limit his suppression arguments to the confines of the established law and to choose to pursue the arguments that, in his sound professional judgment, had greater merit than the lifting-duration argument.

To the extent Mr. Fernandez argues, further, that preserving the lifting duration argument would have led to a successful appeal on the issue, the Court finds this is not reasonably probable. *Strickland*, 466 U.S. at 694 (prevailing in an IAC claim requires the claimant to demonstrate a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have would have been different.).

D.  Certificate of Appealability.

As reasonable jurists could debate whether the Motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further, the Court will issue a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 336,

123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003) (stating the standard for issuing a COA). Mr.

Fernandez's request for a certificate of appealability (Doc. 17 at 13) shall therefore be granted.

**CONCLUSION**

For the foregoing reasons, the Motion **(Doc. 17)** is **DENIED**, this case is **DISMISSED**

**with prejudice**, and a certificate of appealability is **GRANTED**.  The Court will enter a separate

judgment.

/s/
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE